IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHAD E. MATHIS, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.:  1:18-CV-01893-WTL-DLP |
| | ) | |
| METROPOLITAN LIFE INSURANCE CO. | ) | |
| a/k/a/ METLIFE, SOURCE BROKERAGE, | ) | Judge William T. Lawrence |
| INC. and LEE D. MOORE, | ) | Magistrate Judge Doris L .Pryor |
| | ) | |
| Defendants. | ) | |

# PLAINTIFF'S RESPONSE
# TO METLIFE'S MOTION TO DISMISS

Robert E. Saint, Esq.
Of Counsel
EMSWILLER, WILLIAMS, NOLAND & CLARKE, LLC
8500 Keystone Crossing, Suite 500
Indianapolis, IN  46240-2461
Phone:  (317) 257-8787
Fax:  (317) 257-9042
Email: rsaint@ewnc-law.com

## <u>TABLE OF AUTHORITIES</u>

**A.    Cases**

*Amer. U.S. Life Insurance Co. v. Smith*, 5 So.3d 1200, 1215-16 (Ala. 2008).   14-15

*Aetna Ins. Co. of the Midwest v. Rodriguez*, 517 N.E.2d 386, 388 (Ind. 1988). . . . 9

*Alfa Life Ins. Corp. v. Reese,* 185 So.3d 1091, 1103 (Ala. 2015).. . . . . . . . . . . . 14

*Alfa Life Insurance Corp. v. Colza,* 159 So.3d 1240, 1251 (Ala. 2014).. . . . . . . . 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-79, 129 S.Ct. 1937,
173 L.Ed.2d 868 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Baron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th cir. 1992),
*cert. denied*, 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992). . . . . . . . . 22

*Bell Atlantic Crop. v. Twombly,* 550 U.S. 544, 555,
127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bogie v. Rosenberg*, 705 F.3d 603, 604 (2013). . . . . . . . . . . . . . . . . . . . . . . . 23-24

*Crump v. Greer Bros., Inc.*, 336 So.2d 1091, 1093 (Ala. 1976).. . . . . . . . . . . . . 14

*Filip v. Brock*, 879 N.E.2d 1076, 1082, 1084, 1085 (Ind. 2008). . . . 6-9, 11, 12, 14

*Foremost Insurance Co. v. Parham*, 693 So.2d 409, 417 (Ala. 1997). . . . . . . . . . 15

*Galant Ins. Co. v. Isaac*, 751 N.E.2d 672, 676-78 (Ind. 2001).. . . . . . . . . . . . 9-10

*Groce v. American Family Mutual Ins. Co.,*
5 N.E.3d 1154, 1156-58 (Ind. 2014).. . . . . . . . . . . . . . . . . . . . . . 6, 11, 12, 17, 18

*Harris v. Quinn, 656 F.3d 692, 70-701 (7th cir. 2011).* . . . . . . . . . . . . . . . . . . *22*

*Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291
(Ind. Ct. App. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hubbard Manufacturing Company, Inc. v. Greeson*
515 N.E.2d 1071, 1073 (Ind. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15-17

*Kentucky Nat. Ins. Co. v. Empire Fire and Marine Ins. Co.*
919 N.E.2d 565, 576-77 (Ind. Ct. App. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 12, 23

*Liberty Mut. Ins. Co. v. OSI Industries, Inc.,*
831 N.E.2d 192, 198 (Ind. Ct. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Liberty Nat. Life Ins. Co. v. Ingram*, 887 So.2d 222, 227 (Ala. 2004). . . . . . . . . . 15

*Lutz v. DeMars*, 559 N.E.2d 1194, 1196 η.1 (Ind. Ct. App. 1990). . . . . . . . . . . . 22

*Malone v. Basey*, 770 N.E.2d 846, 851 (Ind. Ct. App. 2002). . . . . . . . . . . . . . . . . 9

*Maloof v. John Hancock Life Ins. Co.*, 60 So.3d 263, 271 (Ala. 2010). . . . . . . . . 14

*Melton v. Stephens*, 13 N.E.3d 533, 540 (Ind. Ct. App. 2014). . . . . . . . . . . . . . . . 16

*Murat Temple Assn., Inc. v. Live Nation Worldwide, Inc.,*
935 N.E.2d 1125, 1128-29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Murphy v. Madigan, No. 16 C 11471, 2017 WL 3581175,*
*at * 4 (N.D. Ill. Aug. 18, 2017).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Neizer v. Todd Realty, Inc.*, 913 N.E.2d 211, 215 (Ind. Ct. App. 2009). . . . . . . . .  18

*Schaffert v. Jackson Nat'l Life Ins. Co.,*
687 N.E.2d 230, 232 (Ind. Ct. App. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). . . . . . . . . . . 3, 10, 15-18

*Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015).. . . . . . . . . . . . . . . . . . . . .  6

 *Travelers Ins. Companies v. Rogers*, 579 N.E.2d 1328, 1330. . . . . . . . . . . . . .  13

*Village Furniture, Inc. v. Assoc. Ins. Managers, Inc*
        541 N.E.2d 306, 308 (Ind. Ct. App. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wisconsin Right to Life State Political Action Comm. v. Barland,*
*664 F.3d 139, 148 (7th Cir. 2011).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Witmat v. Dev. Corp. v. Dickson,* 907 N.E.2d 170, 173 (Ind. Ct. App. 2009). . . . . 6

**B.**     **Statutes, Rules and Other Sources**

Fed. R. Civ. P. 8(a)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 Am. Jur. 2d Insurance §§ 161-163, at 202 (2003). . . . . . . . . . . . . . . . . . . . . 7

Restatement (Second) of Conflicts of Laws § 145(2)(1971). . . . . . . . . . . . . . . . . . .

Ind. Code § 27-1-15-12(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ind. Code § 27-8-5-3(a)(11). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Ala. Code § 27-19-14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

iii

## <u>TABLE OF CONTENTS</u>

I.     Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

    B.     Legal Standard for a Motion Pursuant to Fed. R. Civ. P. 12(b)(6). . . . . . 3-4

    C.     Dr. Mathis Alleged a Cause of Action for Negligence Against MetLife. . . 4

         1.     Dr. Mathis' allegations Support a claim for Negligence. . . . . . . . 4-5

         2.     Indiana Law Recognizes an Action for Negligent Procurement. . 5-8

         3.     Dr. Mathis' Reasonable Reliance Upon an Agent's
              Representations Override His Duty to Read the Policy. . . . . . . . . 8-9

         4.     MetLife is Liable for the Representations
              of its Agents and Brokers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

         5.     Statute of Limitations does Not Defeat
              Dr. Mathis' Claim of Negligence. . . . . . . . . . . . . . . . . . . . . . . . 11-13

         6.     Choice of Law - Negligence. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-18

    D.     Dr. Mathis Alleged a Cause of Action Against MetLife. . . . . . . . . . . . . . 18

         1.     Breach of Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-22

         2.     Choice of Law - Breach of Contract. . . . . . . . . . . . . . . . . . . . . . 22-23

    E.     Dr. Mathis' Application Does Not Establish Dr. Mathis Knew
        He Was Not Applying for Occupational Coverage. . . . . . . . . . . . . . . . 23-24

II.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

I.      **ARGUMENT**

A.      **Introduction**

This case arises out of the issuance of a disability insurance policy by Metropolitan Life Insurance Company (MetLife) to Chad E. Mathis, M.D. (Dr. Mathis).  The MetLife Policy was solicited and sold by an insurance agent, Lee D. Moore (Mr. Moore), who sells insurance from his Fishers, Indiana office.  Dr. Mathis was an orthopaedic surgeon practicing in Birmingham, Alabama until his disability.

Sometime on or about 2006, Mr. Moore contacted Dr. Mathis and suggested that Dr. Mathis increase his disability insurance benefits.  At that time, Dr. Mathis was insured by a Standard Insurance Policy (Standard Policy) which insured him in the event he became disabled within his occupation (orthopaedic surgery) and did not require that he be gainfully employed in another occupation to receive benefits.  Mr. Moore ultimately sold Dr. Mathis a MetLife Policy which pays a monthly benefit of Ten Thousand Dollars ($10,000.00) plus a cost of living adjustment.  Prior to and after the issuance of the MetLife Policy, Mr. Moore advised Dr. Mathis the MetLife Policy insured his occupation in the event of a disability without being employed in another occupation.

Mr. Moore acquired the MetLife Policy through Source Brokerage, Inc. (Source Brokerage), an insurance broker whose office is located in Indianapolis, Indiana.  When Source Brokerage procured the policy, Mr. Moore did not familiarize himself with the policy and assumed that the policy provided coverage in the event Dr. Mathis became disabled in

1

his occupation without being employed in another occupation.  Based upon the negligence of Source Brokerage and Mr. Moore's negligence in failing to familiarize himself with the MetLife Policy, Mr. Moore continued to represent to Dr. Mathis the policy was an occupational disability policy.  Based upon these assurances, Dr. Mathis acquired the MetLife Policy and surrendered the Standard Policy.

In 2017, Dr. Mathis became disabled and was unable to work in his occupation for several months.  In August 2017, Dr. Mathis returned to his occupation and made a claim for benefits under the residual disability clause.  MetLife denied Dr. Mathis' claim.  Therefore, Dr. Mathis filed an amended complaint seeking breach of contract damages under the MetLife Residual Disability Benefit Rider and a negligence claim against Mr. Moore, Source Brokerage and MetLife for their negligent failure to procure the proper policy.

Dr. Mathis' claim for breach of contract will survive MetLife's motion to dismiss regardless of what law (Alabama or Indiana) applies.  Since there is not a difference in the substantive law of Indiana or Alabama, the law of the forum state (Indiana) should apply.

However, there is a significant difference between the law of Indiana and Alabama as to Dr. Mathis' negligence claim.  Under Indiana law, Dr. Mathis has a viable claim for negligence against Mr. Moore, Source Brokerage and MetLife.  Additionally, under Indiana law, there is no bar to Dr. Mathis' negligence claim arising out of the applicable statute of limitations.  However, Alabama law would have a negative affect on Dr. Mathis' claim and may bar his claim under the Alabama statute of limitations.  This Court, in its choice of law

analysis, should apply Indiana law because the most significant contacts regarding the negligent conduct, including the procurement of the wrong policy occurred in Indiana; the negligent failure to read or become familiar with the MetLife Policy occurred in Indiana; and the negligent representations regarding coverage occurred by Mr. Moore, an Indiana insurance agent.   Therefore, this case should be controlled by the Indiana Supreme Court decision in *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004).

### B.   <u>Legal Standard for a Motion Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

The requirement under Federal Rule Civil Procedure 8(a)(2) that pleadings contain a 'short and plain statement' requires more than an accusation that the defendant unlawfully harmed me pursuant to Rule 8.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1732, 173L.Ed.2d 868 (2009).   The court is required to take all factual allegations in the complaint as true. *Id.* at *678* (citing *Bell Atlantic Crop. v. Twombly*, 550 U.S. 544, 555 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).   This rule does not apply to legal conclusions. *Id.* This means "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft* at *679.*   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'".  *Id.* at *570*, 127 S.Ct. 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at *556*, 127 S.Ct. 1955."  *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  As

3

described in greater detail below, Dr. Mathis' factual allegations give rise to claims for negligence and breach of contract against MetLife.

### C.     Dr. Mathis Alleged a Cause of Action for Negligence Against MetLife

MetLife argues it is entitled to dismissal because:  (1) there does not exist an action for negligent procurement of insurance coverage; (2) the agent, Moore, did not owe Dr. Mathis a duty; (3) there are insufficient facts to establish an agency relationship between Moore and MetLife; (4) Dr. Mathis' negligence claim is time barred; and (5) the application establishes Dr. Mathis did not apply for "Your Occupation" coverage.

### 1.     Dr. Mathis' Allegations Support a Claim for Negligence

Dr. Mathis' Amended Complaint makes the following relevant allegations to support a claim for negligence against MetLife:

18.   On or before November 16, 2006, Dr. Mathis was insured by a disability insurance policy issued by Standard Insurance Company (Standard Policy) which insured Dr. Mathis in the event he became disabled within his occupation of orthopaedic surgery.  The Standard Policy insured Dr. Mathis in the event of a total disability if he was unable to perform his occupation of orthopaedic surgery regardless of whether he was employed in another occupation or not.  This coverage is typically referred to as occupational disability coverage. [Doc. 17 at 5, Am. Compl., ¶ 18]

19.   Before November 16, 2006, Mr. Moore encouraged Dr. Mathis to increase the amount of his occupational disability coverage to protect Dr. Mathis' increased income and earning ability as an orthopaedic surgeon. [Doc. 17 at 6, Am. Compl., ¶ 19]

20.   Before November 16, 2006, Mr. Moore suggested to Dr. Mathis that he surrender his Standard Policy and replace it with an occupational disability policy similar to the Standard Policy to insure his increased income and earning ability.  Ultimately, Mr. Moore advised Dr. Mathis the MetLife Policy

No. 6490290 AH, which is attached hereto and marked as Exhibit "A", was the best policy to replace the Standard Policy. [Doc. 17 at 6, Am. Compl., ¶ 20]

21.   Before November 16, 2006, Mr. Moore requested Source Brokerage for a MetLife Policy with occupational disability coverage which specifically insured Dr. Mathis' occupation in the event of a total disability as an orthopaedic surgeon without the need to be gainfully employed. [Doc. 17 at 6, Am. Compl., ¶ 21]

22.   At all relevant times, Source Brokerage acquired the MetLife Policy and represented to Mr. Moore the MetLife Policy was an occupational disability coverage which insured Dr. Mathis' occupation in the event of a total disability (without the need to be insured in another occupation) and a residual disability. [Doc. 17 at 6, Am. Compl., ¶ 22]

23.   Unbeknownst to Mr. Moore, the MetLife Policy did not specifically insure Dr. Mathis' occupation, but only insured Dr. Mathis in the event he was "prevented from performing the material and substantial duties of (his) regular occupation and "not gainfully employed". [Doc. 17 at 6, Am. Compl., ¶ 23]

24.   At all relevant times before and after November 16, 2006, Mr. Moore represented to Dr. Mathis the MetLife Policy provided occupational disability coverage which insured Dr. Mathis in the event he became totally disabled in his occupation (without the need to be gainfully employed). [Doc. 17 at 6, Am. Compl., ¶ 24]

25.   At all relevant times, Source Brokerage and Mr. Moore were acting as agents of MetLife when they sold Dr. Mathis the policy. [Doc. 17 at 7, Am. Compl., ¶ 25]

Additionally, Dr. Mathis alleges in paragraph 8 of his amended complaint, "Attached hereto and marked as Exhibit "A" is a true and accurate copy of the MetLife Policy No. 6490290 AH (policy) sold and delivered to Dr. Mathis on November 16, 2006." [Doc. 17 at 2, ¶ 8] The application attached to the MetLife Policy shows an Indiana facsimile number to and from 317-558-1001. [Doc. 17-1 at 31, MetLife Policy]

5

Dr. Mathis also alleged Source Brokerage, Inc. is an Indiana corporation with its principal place of business located in Indianapolis, Indiana. [Doc. 17 at 1, Am. Compl., ¶ 3] Dr. Mathis further alleged Mr. Moore is a licensed insurance broker and agent authorized to sell disability insurance and Moore's business office is located in Fishers, Indiana. [Doc. 17 at 2, Am. Compl., ¶ 4]

Dr. Mathis alleges in paragraphs 33 and 34, as follows:

33.     The Defendants negligently failed to become familiar with the MetLife Policy and negligently failed to insure Dr. Mathis for a total disability within his occupation as an orthopaedic surgeon (without the need to be gainfully employed).

34.     As a direct and proximate cause of the defendants' negligence, Dr. Mathis suffers the loss of benefits he would have received if he had been insured by an occupational disability policy.

In summary, Dr. Mathis' amended complaint alleges the requisite elements for a claim of negligence against MetLife under Indiana law.

### 2.     Indiana Law Recognizes an Action for Negligent Procurement

The elements for a negligence action, under Indiana law, requires the plaintiff make factual allegations that the defendant (1) owed a duty; (2) the defendant breached the duty; and (3) injury was proximately caused by the breach. *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Witmat v. Dev. Corp. v. Dickson*, 907 N.E.2d 170, 173 (Ind. Ct. App. 2009)).

Indiana recognizes a cause of action for negligent procurement of the wrong coverage. *See* generally, *Groce v. American Family Mutual Ins. Co.*, 5 N.E.3d 1154, 1156-57 (Ind.

2014) and *Filip v. Brock*, 879 N.E.2d 1076 (Ind. 2008). An insurance agent (broker) has a general duty to exercise reasonable care, skill and good faith diligence in obtaining insurance. *Id.* at *1085.* "Included in this general duty is a duty of care to procure the insurance asked for by the potential insured." *Id.* (citing generally 43 Am. Jur. 2d Insurance §§ 161-163, at 202 (2003)). Dr. Mathis specifically alleged in paragraphs 18 and 19 that Mr. Moore suggested and encouraged him to increase his occupational disability coverage that he had in effect with Standard Insurance Company and replace it with an occupational disability policy similar to his Standard Policy to insure his increased income and earning ability. Dr. Mathis further alleged in paragraph 24 the "MetLife policy provided occupational disability coverage which insured Dr. Mathis in the event he became totally disabled in his occupation (without the need to be gainfully employed)." [Doc. 17 at 6, Am. Compl., ¶ 24] Dr. Mathis alleged he purchased the MetLife Policy following Mr. Moore's representations about coverage. The factual allegations in the amended complaint allege, in essence, that Dr. Mathis acquiesced and agreed to purchase the MetLife Policy as a replacement policy similar in coverage to the Standard Policy. Thus, Dr. Mathis authorized Mr. Moore to obtain an occupational disability policy, similar to the Standard Policy, but with greater coverage. The defendants failed to use reasonable care and skill in procuring the replacement policy. In paragraphs 22 through 24 and 33, Dr. Mathis alleges, in essence, Mr. Moore failed to inform himself with the coverage in the MetLife Policy was different than his Standard Policy, but represented to Dr. Mathis the policy was an occupational disability policy that insured him

in the event he was totally disabled in his occupation without being gainfully employed. Dr. Mathis alleged the defendants breached their general duty of care to procure a replacement policy similar to his Standard Policy. Based upon the foregoing facts and law, Dr. Mathis has alleged a cause of action for the negligent procurement of insurance - a cause of action recognized by Indiana law.

### 3.   Dr. Mathis' Reasonable Reliance Upon an Agent's Representations Override His Duty to Read the Policy

The amended complaint alleges Mr. Moore represented before and after the MetLife policy was sold that it "insured Dr. Mathis in the event he became totally disabled in his occupation (without the need to be gainfully employed)." [Doc. 17 at 6, Am. Compl., ¶ 24]  Moreover, the amended complaint alleges Mr. Moore encouraged Dr. Mathis to increase the amount of occupational disability coverage by surrendering his Standard Policy and replace it with similar coverage.  Mr. Moore advised Dr. Mathis the MetLife Policy was the best policy to replace the Standard Policy. [Doc. 17 at 6, ¶s 19-20]  Based upon these allegations, it was reasonable for Dr. Mathis to rely upon Mr. Moore's representations of coverage.

Indiana recognizes that an insured's reasonable reliance on an agent's representations can override an insured's duty to read the policy.  *Filip* at *1084* (citing *Village Furniture, Inc. v. Assoc. Ins. Managers, Inc.*, 541 N.E.2d 306, 308 (Ind. Ct. App. 1989).  "In general, this exception negates an insured's duty to read part of the policy if an agent insists that a particular hazard will be covered." *Id.*

The issue in *Filip* was whether there was evidence the agent made representations the policy covered their loss.  The Indiana Supreme Court in *Filip*, held there was evidence the agent represented the policy would cover the insured's loss, despite the fact the policy did not provide coverage for the loss.  The agent's representations about coverage created a question of fact defeating the insurer's motion for summary judgment.

Dr. Mathis' amended complaint alleges facts establishing Mr. Moore made representations that the MetLife Policy insured him in the event he was unable to practice orthopaedic surgery without being gainfully employed.  Under the factual circumstances alleged in the amended complaint, Dr. Mathis reasonably relied upon Mr. Moore's representations regarding coverage.  Accordingly, Mr. Moore's representations about coverage override Dr. Mathis' duty to read the policy and MetLife cannot rely upon the contractual obligations to defeat Dr. Mathis' action for negligence.

### 4.      MetLife is Liable for the Representations of Its Agents and Brokers

Indiana has long held an insurance agent who represents several companies is considered to be an insurance broker.   *Malone v. Basey*, 770 N.E.2d 846, 851 (Ind. Ct. App. 2002).  When an agent undertakes to procure insurance for another, the agent is acting as the agent for the proposed insured.  *Id.*  "However, Indiana courts have consistently determined that an insurance broker becomes the agent of the insurer when an insurance policy is issued." *Id.*  (quoting *Aetna Ins. Co. of the Midwest v. Rodriguez*, 517 N.E.2d 386, 388 (Ind. 1988), reh'g denied.).  The Indiana Supreme Court in *Galant Ins. Co. v. Isaac*, 751 N.E.2d

9

672, 676-78 (Ind. 2001) clarified this agency rule is based upon apparent authority. This authority exists when the insurer made the necessary manifestations to create a reasonable belief in the insured's mind the agent (broker) had the authority to transact business on behalf of the insurer. *Id.* at *677.* These manifestations need not be in the form of direct communications. Rather, the manifestations may be made by merely placing the agent (broker) in a position to perform acts or make representations that appear reasonable to the proposed insured. *Id.* In *Galant*, the Indiana Supreme Court affirmed summary judgment in favor of the insured and against the insurer on the agency issue when the insured completed a Gallant pre-printed insurance application, signed a pre-application check list and subsequently received the Gallant Insurance Policy.

In this case, Dr. Mathis signed a MetLife pre-printed application for disability income insurance. [Doc. 17-1 at 22-29, MetLife Policy]  Dr. Mathis signed a pre-printed MetLife Authorization. [Doc. 17-1 at 30, MetLife Policy]  Dr. Mathis also signed a MetLife pre-printed authorization for paramedical exam. This form was faxed to and from Mr. Moore's office. [Doc. 17-1 at 31-32, MetLife Policy]  On November 28, 2006, MetLife issued to Dr. Mathis the MetLife Disability Income Insurance Policy with the application, authorization and paramedical exam attached. [Doc. 17-1 at 2 through 32, MetLife Policy]  Moreover, Dr. Mathis alleges in paragraphs 19 through 24 of his amended complaint that Mr. Moore initiated the process of increasing the amount of occupational disability coverage; Mr. Moore suggested to Dr. Mathis he replace the Standard Policy with the MetLife Policy (attached as

Exhibit "A" to the Complaint); Mr. Moore worked with Source Brokerage, Inc. to acquire the MetLife Policy; Source Brokerage obtained the wrong policy (a policy that did not insure Dr. Mathis with an occupational disability policy similar to the Standard Policy); and Mr. Moore made specific representations that the MetLife Policy insured Dr. Mathis' occupation (orthopedic surgery) without the need to be gainfully employed. [Doc. 17 at 6, Am. Compl., ¶s 19-24]  As stated above, MetLife issued the policy which is attached to the Amended Complaint as Exhibit "A".  [Doc. 17 at 6, Am. Compl.,  ¶ 20 and 17-1 at 1-32]  Based upon these factual allegations, Dr. Mathis alleged in paragraph 25, "At all relevant times, Source Brokerage and Mr. Moore were acting as agents of MetLife when they sold Dr. Mathis the policy." [Doc. 17 at 7, Am. Compl., ¶ 25]

Based upon the factual allegations contained within Dr. Mathis' amended complaint, Dr. Mathis has alleged the existence of an agency relationship between Mr. Moore/Source Brokerage and MetLife to establish MetLife's vicarious liability for the negligent acts of Mr. Moore and Source Brokerage.

**5.    Statute of Limitations Does Not Defeat Dr. Mathis' Claim of Negligence**

The general rule is that a claim against an agent for negligent procurement of the wrong coverage begins to run when the policy is issued.  *Groce v. American Family Mutual Ins. Co.* at 1157-58 (quoting *Filip* at 1082).  However, an exception to the general rule applies when the policyholder reasonably relies upon the agent's representations.  *Id.* This exception is available if the agent made representations to the insured, if true, would

11

have covered the insured's loss and also tolled the running of the statute of limitations. *Groce* at *1157.* As stated above, Dr. Mathis' amended complaint alleges, in paragraphs 22 - 24, Mr. Moore mistakenly believed the MetLife Policy insured Dr. Mathis in the event he became totally disabled in his occupation or orthopaedic surgery without the need to be gainfully employed. Mr. Moore represented to Dr. Mathis the MetLife Policy had coverage similar to the coverage under his Standard policy. Specifically, the amended complaint alleges, "At all relevant times before and after November 16, 2006, Mr. Moore represented to Dr. Mathis the MetLife Policy provided occupational disability coverage which insured Dr. Mathis in the event he became totally disabled in his occupation (without the need to be gainfully employed)." [Doc. 17 at 6, Am. Compl., ¶ 24]

The Indiana Supreme Court in *Groce*, relying upon *Filip* at 1085, held when the agent and insured believed the policy covered a specific loss, the statute of limitations may have begun to run when the claim was denied. *Groce* at *1157.* Under these facts, the statute of limitations began to run when the claim was denied[1]. Based upon the allegations in the amended complaint, Dr. Mathis' claim of negligence is not defeated by the statute of limitations and the statute of limitations began to run when Dr. Mathis' claim was denied. Paragraphs 26 through 28 allege Dr. Mathis began to experience an impairment on March 24, 2017, which would have given rise to a claim under the MetLife Policy. Therefore, the earliest date Dr. Mathis could have made a claim was on March 24, 2017. Based upon *Groce*

---

[1] *MetLife attached a termination of claim letter issued in January, 2018. Therefore, the evidence before the Court is the claim was denied in January, 2018. [Doc. 18-1]*

and *Filip*, Dr. Mathis' claim would have commenced sometime thereafter when Dr. Mathis' claim was denied.  Accordingly, Dr. Mathis filed this action within the two-year limitations period.

### 6. Choice of Law - Negligence

MetLife raises a choice of law question in its motion to dismiss.  Choosing which state substantive law should govern the controversy is a decision to be made by the court of the state where the action is pending. *Travelers Ins. Companies v. Rogers*, 579 N.E.2d 1328, 1330 (citing *Hubbard Manufacturing Company, Inc. v. Greeson,* 515 N.E.2d 1071, 1073 (Ind. 1987)).  Indiana permits different claims within the lawsuit to be analyzed separately. *Kentucky Nat. Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 576-77 (Ind. Ct. App. 2010).  This means Indiana would analyze a contract claim and a negligent claim separately and may apply the law of different jurisdictions differently to these claims. *Id*.

Dr. Mathis alleged two separate claims against MetLife - a claim for breach of contract and a claim for negligence.  However, it is important to note the negligence claim against MetLife is based upon its vicarious liability for the negligence of its agents (i.e., Mr. Moore and Source Brokerage).  In determining which state law should apply, the court, as a preliminary matter, must determine whether the differences between the laws of the various states is important enough to affect the outcome of the litigation. *Simon v. United States* at 805.

13

There is significant conflict between Indiana and Alabama law on the negligence issue.   As discussed above, Indiana law recognizes a cause of action for negligent procurement based upon the allegations within the amended complaint.   Indiana also recognizes the reasonable representations of the agent can override the duty of the insured from reading the policy.   Under the circumstances alleged in the amended complaint, Dr. Mathis' cause of action is tolled until MetLife denies coverage. Finally, Indiana law makes MetLife vicariously liable for the actions of its agents once the policy is sold.

Alabama does recognize a cause of action for negligent procurement of insurance. *Crump v. Greer Bros., Inc.*, 336 So.2d 1091, 1093 (Ala. 1976).  However, Alabama law is significantly different regarding a policyholder's duty to read the policy.  In *Alfa Life Ins. Corp. v. Reese,* 185 So.3d 1091, 1103 (Ala. 2015), (quoting from *Alfa Life Insurance Corp. v. Colza,* 159 So.3d 1240, 1251 (Ala. 2014)), an insured has a general duty to read the documents (insurance policy and application) in connection with a particular transaction. Alabama has taken a much stricter view of the duty to read, citing *Colza*, 159 So.3d at 1259, which means "any adult of sound mind capable of executing a contract necessarily has a conscious appreciation of the risk associated with ignoring documents containing essential terms and conditions related to the transaction that is the subject of the contract."  *Id.* at *1103-04*.

A cause of action for negligent procurement does not exist in Alabama when the insurance agent's representations are contradicted by the language in the insurance policy.

14

*Maloof v. John Hancock Life Ins. Co.*, 60 So.3d 263, 271 (Ala. 2010) (relying upon *Amer. U.S. Life Insurance Co. v. Smith*, 5 So.3d 1200, 1215-16 (Ala. 2008)).

Moreover, under Alabama law, the statute of limitations is not tolled, based upon an agent's representation of coverage, if the policyholder is capable of reading and understanding the policy. *Id.* Alabama applies a two-year statute of limitations to a cause of action for misrepresentations by an insurance company.  The cause of action accrues on the date the policy is delivered.  *Liberty Nat. Life Ins. Co. v. Ingram*, 887 So.2d 222, 227 (Ala. 2004) (quoting *Foremost Insurance Co. v. Parham*, 693 So.2d 409, 417 (Ala. 1997)).  The cause of action accrues when the policy is delivered. *Id.*

In summary, there are significant differences between Indiana and Alabama law. Under Indiana law, Dr. Mathis has a viable cause of action against MetLife for the negligence of its agents.  Under the facts of this case, Dr. Mathis would not have a cause of action for negligence under Alabama law.

If there is a conflict, the presumption is the traditional *lex loci delicti* rule (place of the wrong) applies.  *Id.*  Therefore, "[i]n tort cases, Indiana choice-of-law analysis now involves multiple inquiries.   As a preliminary matter, the Court must determine whether the differences between the laws of the states are 'important enough to affect the outcome of the litigation'".  *Hubbard,* 515 N.E.2d at *1073*.  If such a conflict exists, the presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply. *Id*.  Under this rule, the Court applies the substantive laws of the one "the state where the last event necessary to

make an actor liable for the alleged wrong takes place. *Id*." *Simon* at *804-05*. The presumption may be overcome if the place of the tort bears little significance to the legal act. *Simon v. United States* at *805* (quoting *Hubbard*, 515 N.E.2d at 1073).

MetLife relies substantially on *Melton v. Stephens*, 13 N.E.3d 533, 540 (Ind. Ct. App. 2014) in its choice of law analysis. *Melton* involved an automobile/truck collision which occurred in the State of Illinois. However, the action was filed in Knox County, Indiana and the court applied the traditional *lex loci delecti* rule because the accident (place of the injury) occurred in Illinois. *Melton* does not analyze the choice of law once the presumption is overcome. In this case, a more comprehensive analysis is required.

Applying a more comprehensive analysis, MetLife argues Alabama law should apply because Dr. Mathis worked and lived in Alabama; applied for the policy in Alabama; the policy was issued to him in Alabama; and the agent, Lee Moore, brokered the policy through his Alabama producer's license. [Doc. 19 at 11, MetLife's Memorandum]

MetLife states, "Dr. Mathis' insurance broker, defendant Lee Moore, has his office in Indiana, and brokered the Policy through his **Alabama Producer's License**. (Emphasis added) MetLife refers the Court to Doc. 17-1, Page ID #119. This page bears two signatures. However, it is difficult to ascertain whether the person signing as a witness is Lee Moore's signature. Even assuming Lee Moore signed as a witness, there is no evidence Lee Moore ever had an Alabama Producer's License.[2]

---

[2] *As discovery commences, it will become clear Lee Moore does not have an Alabama Producer's License and only is licensed in Indiana. The amended complaint refers to Moore being a*

In this case, the Court should entertain other relevant contacts, including (1) the place where the conduct causing the injury occurred; (2) the residence of place of business of the parties; and (3) the place where the relationship is centered. *Id.* at *805* (quoting *Hubbard* at 1073-74). In *Simon*, the Indiana Supreme Court analyzed the choice of law question by evaluating the most significant and relatively important contacts to the litigation. In doing so, the court applied Indiana law because the conduct in Indiana was more proximate to the harm. *Simon* at *807*. The court noted it was the conduct of the air traffic controllers, who were located in Indiana, that was at issue, not the conduct of the plaintiffs. *Id.* The contacts in the state of Alabama are relatively insignificant to the acts and omissions producing the harm. However, the contacts in Indiana are significant as to the state where the negligent acts and omissions occurred and where the negligent act causing the harm occurred. The offices of Mr. Moore and Source Brokerage are located in Indiana. According to the amended complaint, Mr. Moore requested Source Brokerage for a MetLife policy which insured Dr. Mathis' occupation. Indiana is the location where Source Brokerage acquired the wrong policy. Indiana is the location where Mr. Moore negligently represented coverage to Dr. Mathis. Also, the application for the MetLife Policy was completed by Mr. Moore in Indiana. Thus, whether the "last event necessary to make an action liable for the alleged wrong" was Source Brokerage acquiring the wrong policy, Mr. Moore negligently represent the coverage or Mr. Moore completing the application, the last act occurred in Indiana.

---

*licensed agent with his business office located in Indiana.*

Additionally, as an insurance producer in Indiana, Moore's conduct was governed by Indiana law. The Indiana Code provides guidelines for the conduct of insurance producers licensed in Indiana. Ind. Code Ann. § 27-1-15.6-12(b). Additionally, Moore has duties as an insurance producer imposed on him by case law. *See Groce* at *1154* and *Filip* at *1076*. Moore's conduct relating to the procurement of Mathis's disability insurance was governed by Indiana law, and therefore Indiana law should apply.

      **D.**      **<u>Dr. Mathis Alleged a Cause of Action Against MetLife</u>**

      **1.**      **Breach of Contract**

The elements for breach-of-contract claim are the existence of a contract, defendant's breach thereof and damages. *Murat Temple Assn., Inc. v. Live Nation Worldwide, Inc*., 935 N.E.2d 1125, 1128-29 (citing *Neizer v. Todd Realty, Inc.*, 913 N.E.2d 211, 215 (Ind. Ct. App. 2009) *trans. denied*). Dr. Mathis has clearly pled a breach of contract action. First, Dr. Mathis, in paragraph 8, has pled the existence of a contract and designated the policy as Exhibit "A" and attached it to his amended complaint. [Doc. 17 at 2, Am. Compl., ¶ 2 and Doc. 17-1 at 2-32]

Dr. Mathis has specifically alleged in the amended complaint sections of the MetLife Policy, which define "total disability", "residual disability", "waiver of premium clause", the definition of "disability" or "disabled" and the rider for disability. [Doc. 17 at 2-5, Am. Compl., ¶ 2-17]  Dr. Mathis alleges in paragraph 26 he "became impaired due to injury or sickness and prevented from performing the material and substantial duties of his occupation

18

. . . ." [Doc. 17 at 7, Am. Compl., ¶ 26]  Dr. Mathis further alleged in paragraph 27 he returned to his occupation in late August or early September, 2017, "but was unable to perform one or more of his (of) his material and substantial duties of his regular occupation and was unable to perform the material and substantial duties of his regular occupation for more than 80 percent of the time normally required by Dr. Mathis" [Doc. 17 at 7, Am. Compl., ¶ 27] Dr. Mathis also alleged in paragraph 28, "Effective February 2018, Dr. Mathis was unable to perform the material and substantial duties of his occupation and was determined to be permanently and totally disabled by his treating physician.  As a result, Dr. Mathis was forced to discontinue his practice as an orthopaedic surgeon and began working for Smith and Nephew - an orthopaedic device manufacturer.  [Doc. 17 at 7, Am. Compl., ¶ 28]  Dr. Mathis' allegations, particularly, in paragraphs 27 and 28, allege he was partially disabled as described in the Rider: Monthly Benefit for Residual Disability.  [Doc. 17-1 at 15, MetLife Policy]  On page 3 of the MetLife Policy, Dr. Mathis paid a separate premium for this coverage. [Doc. 17-1 at 3, MetLife Policy]

In paragraph 30, Dr. Mathis alleged, "MetLife breached the terms of the Policy by failing to pay Dr. Mathis total and/or residual disability benefits. [Doc. 17 at 7, Am. Compl., ¶ 30]  Dr. Mathis alleged in paragraph 31, "As a direct and proximate cause of MetLife's breach of the Policy, Dr. Mathis suffers the loss of his disability benefits." [Doc. 17 at 7, Am. Compl., ¶ 7]

Dr. Mathis alleged the three elements of a breach of contract under Indiana law - (1) the existence of a contract, (2) MetLife's breach thereof, and (3) damages. Moreover, Dr. Mathis clearly describes that he met the conditions necessary to be either totally disabled or residually disabled under the MetLife Policy and MetLife breached the Policy by failing to pay benefits. Dr. Mathis' allegations in his amended complaint under Rule 8(a) as described in *Ashcroft*, comport with the necessary allegations which allows the Court to draw the inference MetLife is liable for breach of contract.

MetLife also agues Dr. Mathis' action for breach of contract should be dismissed for failure to perform certain duties, thus, making his claim not ripe. The policy merely provides a Notice of Claim and Proof of Loss provisions. [Doc. 17-1 at 11, MetLife Policy] MetLife states in its Memorandum at 23 "Dr. Mathis failed to provide proof of loss to MetLife for any claim based on his February, 2018 change of occupation or for any time period after September 30, 2017. MetLife denied his claim on January 3, 2018, based on proof of loss he submitted for the time period from August 21, 2017 to September 30, 2017, while he was working as an orthopaedic surgeon. (Ex. 1, 1/13/18 Decision Ltr.). MetLife further argues Dr. Mathis never provided any claim or proof to MetLife after its decision of January 3, 2018 to establish a claim based on his alleged inability to work as an orthopaedic surgeon, that did not commence until a month later in February, 2018. [Doc. 19 at 23, MetLife's Memorandum]

MetLife misconstrues Dr. Mathis' breach of contract claim as being separate claims - one claim from August 21, 2017 until September, 2018 and a second claim beginning after February, 2018.  Instead, Dr. Mathis made a claim beginning in August, 2017 until the present under the MetLife Policy Residual Disability Rider.  As specifically described in paragraph 13 of Dr. Mathis' amended complaint, a Residual Disability "means that due solely to impairment caused by injury or sickness (1) Your Earnings are reduced by at least twenty percent (20%) of your Prior Earnings; and (2) You're receiving appropriate care from a physician whose appropriate to treat the condition causing the impairment; and (3) You are not Totally Disabled, and are gainfully employed, but You are: (a) Prevented from performing one or more of the material and substantial duties of Your Regular Occupation; or (b) Performing the material and substantial duties of Your Regular Occupation, but not able to perform them for more than 80% of time normally required of You; or (c) Engaged in another occupation." [Doc. 17 at 5, Am. Compl., ¶ 13]  Dr. Mathis' amended complaint alleges in paragraphs 27 and 28 an ongoing residual disability - not two separate claims.

MetLife cites multiple cases arguing Dr. Mathis' claim for breach of contract action is not ripe, because Dr. Mathis failed to provide proof of loss after January, 2018.  However, the cases cited by MetLife are not based upon Indiana or Alabama law and did not wait 60 days after submitting the proof of loss to file the suit.  However, it is undisputed by MetLife's statements in its memorandum that Dr. Mathis submitted his claim on September 30, 2017. [Doc. 19 at 23, MetLife Memorandum] It is also undisputed Dr. Mathis filed his action on

June 20, 2018, approximately 270 days after submitting his proof of loss on September 30, 2017. [Doc. 1]

Moreover, the legal authority relied upon by MetLife is not applicable to a complaint for breach of an insurance policy. *Wisconsin Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011) (involved issues of standing, ripeness and mootness of a Wisconsin election law); *Murphy v. Madigan*, No. 16 C 11471, 2017 WL 3581175, at * 4 (N.D. Ill. Aug. 18, 2017) (involved an action brought by an indigent class of Illinois sex offenders for violations of the Eighth and Fourteenth Amendments because they could not find approved housing after completing their prison sentences.); *Harris v. Quinn*, 656 F.3d 692, 700-01 (7th Cir. 2011) (involved First Amendment arguments that were found not to prohibit being compelled to pay mandatory fair share fees to union).  The Seventh Circuit held ripeness claims do not result in dismissal with prejudice and the plaintiff has a right to re-plead.  *Id*.

## 2.    Choice of Law - Breach of Contract

Before engaging in a conflict of laws analysis, courts should determine if there is a difference between the relevant laws of different states.  *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997) (quoting *Baron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992), *cert. denied*, 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992)).  If the Court finds the purposes and policies of the respective states are the same, the forum state (Indiana) should apply the forum law. *Id*. (citing *Lutz v. DeMars*,

559 N.E.2d 1194, 1196 ŋ.1 (Ind. Ct. App. 1990), *trans denied.*) and *Liberty Mut. Ins. Co. v. OSI Industries, Inc.,* 831 N.E.2d 192, 198 (Ind. Ct. App. 2005).

Of significance, MetLife in its memorandum fails to undertake any significant analysis of a difference between the relevant purposes and policies underlying a breach of contract action governed by Indiana and Alabama.  MetLife did note Ala. Code § 27-19-14 and Ind. Code § 27-8-5-3(a)(11) have the same requirement that a legal action cannot be brought for 60 days after written was furnished.  Because there does not exist any significant differences under Indiana and Alabama law, the law of Indiana (forum state) should apply.

Indiana follows the most intimate contact test as the choice of law rule for contract actions.  *Kentucky Nat. Ins. Co. v Empire Fire and Marine Ins. Co.* at *575* (citing *Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 232 (Ind. Ct. App. 1987)).

### E.   Dr. Mathis' Application Does Not Establish Dr. Mathis Knew He Was Not Applying for Occupational Coverage

MetLife argues Dr. Mathis' claim for negligence is defeated by the application to the complaint he signed, because the box " ☐ Your Occupation" was not checked. Doc. 19 at 4, MetLife Memorandum]

MetLife relies upon *Bogie v. Rosenberg*, 705 F.3d 603, 604 (2013).  *Bogie* involved a claim for invasion of right of privacy.  Bogie attached a copy of a video (which depicted her talking back stage with Joan Rivers) to her complaint.  The video also showed three other individuals present within a few feet of Bogie and Rivers.  According to the district court, Bogie's exchange with Rivers "occurred in what appears to be a relatively crowded

23

backstage area, with the din of chatter in the background . . . ." *Bogie* at *610*.  According to the Seventh Circuit, the video determined that no reasonable person would have an expectation of privacy in that situation. *Bogie* at *611*.

MetLife's reliance upon question 5 does not have the same conclusive effect as the video in *Bogie*.  First, question 5 has multiple boxes to check.  Under the Base Policy and Optional Benefits Being Applied For, the box ☒ for Omni Advantage is checked.  [Doc. 17-1 at 23, MetLife Policy]  However, the application does not explain what is included in this base coverage and whether it contains coverage for occupational disability coverage within the base coverage.  Next, MetLife's argument assumes Dr. Mathis completed the application.  However, there does not exist any evidence the application, itself, was completed by Dr. Mathis or the agent.  Also, there does not exist any evidence Dr. Mathis saw the application, checked the various boxes on question 5 or was the information contained within question 5.

Under Indiana law, as described above, Dr. Mathis reasonably relied upon the representations of his agent that the MetLife Policy insured him in the event he became disabled in his occupation without the need to be gainfully employed. [Doc. 17 at 6, Am. Compl., ¶ 24]  In ruling on MetLife's motion to dismiss, Dr. Mathis' alleged facts are to be viewed in the light most favorable to the nonmoving party.  *Bogie* at *609*.

## II.    CONCLUSION

In conclusion, MetLife's motion to dismiss should be denied.  Dr. Mathis has alleged a cause of action for negligence under Indiana law.  Indiana law should govern the negligence claim under the most significant and relatively important contacts, because the negligent conduct giving rise to the harm occurred in the State of Indiana.

MetLife's motion to dismiss the breach of contract claim should, likewise, be denied because Dr. Mathis met the pleading requirements for a breach of contract under federal law as described in decisions from the United States Supreme Court.  Moreover, MetLife's claim that Dr. Mathis' breach of contract claim is not ripe, is not persuasive since Dr. Mathis has an ongoing claim for residual disability under the Residual Disability Rider and produced necessary information which resulted in a denial of his claim.  Also, MetLife's argument that Dr. Mathis' claims should be denied because he failed to check the box ☐ Your Occupation, is not supported by the pleadings when they are viewed in the most favorable light to Dr. Mathis.

To the extent there exists any deficiencies under the negligence or breach of contract claim (or the choice of law), they may be cured or clarified by re-pleading.  This would include allegations regarding how the application was prepared; who completed the application; where the application was completed; where the negligent acts and representations occurred before and after issuance of the MetLife Policy; and other relevant facts.

Respectfully submitted,

/ s /  *Robert E. Saint*
       Robert E. Saint,
       Attorney for the Plaintiff,
       Chad E. Mathis, M.D.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Response to MetLife's Motion to Dismiss was filed electronically with the Court, pursuant to Rule 86(G) of the Indiana Rules of Trial Procedure, via the Indiana E-Filing System this 22nd day of August, 2018, with electronic copies to all ECF registered counsel of record via email generated by the Court's ECF system.

/ s /  *Robert E. Saint*
       Robert E. Saint

Robert E. Saint, Esq.
Of Counsel
EMSWILLER, WILLIAMS, NOLAND & CLARKE, LLC
8500 Keystone Crossing, Suite 500
Indianapolis, IN  46240-2461
Phone:  (317) 257-8787
Fax:  (317) 257-9042