UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHAD E. MATHIS M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01893-JRS-DLP |
| | ) | |
| METROPOLITAN LIFE INSURANCE CO. | ) | |
| a/k/a METLIFE, | ) | |
| SOURCE BROKERAGE, INC., | ) | |
| LEE D. MOORE, | ) | |
| | ) | |
| Defendants. | ) | |

## Entry on Pending Motions

Plaintiff, Chad E. Mathis, M.D., was insured under Disability Policy No. 6490290 (the "MetLife Policy" or "Policy") issued by Defendant Metropolitan Life Insurance Co. a/k/a/ MetLife ("MetLife"). Mathis was an orthopedic surgeon who alleges he became disabled in March 2017 and submitted a claim for disability insurance benefits. Following a 90-day elimination period, MetLife paid Mathis benefits until August 2017, when MetLife stopped paying benefits. Mathis alleges he has remained continuously disabled since March 2017. Invoking the court's diversity jurisdiction under 28 U.S.C. § 1332, he sued MetLife for breach of contract and sued MetLife as well as Defendants Source Brokerage, Inc. ("Source Brokerage"), an Indiana insurance broker, and Lee D. Moore, a licensed insurance broker and agent, for negligence in procuring the MetLife Policy.

Now pending before the court are: (1) MetLife's Motion to Dismiss the Amended Complaint (ECF No. 18), (2) Defendant Source Brokerage, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 20), (3) Defendant Lee D. Moore's Motion to Dismiss Plaintiff Chad E. Mathis, M.D.'s Amended Complaint (ECF No. 31), and (4) Plaintiff's Objections to MetLife's Exhibits Not Attached to the Amended Complaint and Not Referred to and Central to the Amended Complaint (ECF No. 36). MetLife moves to dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), arguing that Mathis has no legally viable claim for negligence, and his negligence claim is time barred and/or barred by the doctrine of contributory negligence. MetLife also maintains that the breach of contract claim is not ripe and is contractually prohibited by the terms of the Policy. Source Brokerage contends that if the Court grants MetLife's motion to dismiss on the grounds asserted, the Court's holding would apply equally to the negligence claims against Source Brokerage. Therefore, Source Brokerage moves to dismiss the Amended Complaint for failure to state a claim. Moore moves to dismiss the Amended Complaint on the grounds that Mathis' only claim against him, his negligence claim, is barred by the doctrine of contributory negligence or by the applicable statute of limitations. Plaintiff's Objections to MetLife's Exhibits urge that MetLife impermissibly relies on documents not referenced in the Amended Complaint and requests that the Court not convert the motion to dismiss to a motion for summary judgment. Having considered the motions, objections, briefs, complaint, and applicable law, the Court finds that the motions to

dismiss (ECF Nos. 18, 20, and 31) should be **granted** and the objections to the exhibits (ECF No. 36) should be **overruled in part and sustained in part**.

## I.     Dismissal Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion to dismiss, the court takes the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). The court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In addition to the allegations in the complaint, on a motion to dismiss, the court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)). Thus, the court may consider such a document "without converting a motion to dismiss into a motion for summary judgment." *Id.* at 891–92.

"[I]f a plaintiff pleads facts that show its suit [is] barred . . . , it may plead itself out of court under a Rule 12(b)(6) analysis." *Orgone Capital*, 912 F.3d at 1044

(quoting *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995)); *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013) (on a motion to dismiss "district courts are free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim'") (quoting *Hamilton v. O'Leary,* 976 F.2d 341, 343 (7th Cir. 1992)). "When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity . . . to amend the complaint to correct the problem if possible." *Bogie,* 705 F.3d at 608. Nonetheless, leave to amend need not be given if the amended pleading would be futile. *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962).

## II.    Factual Background

The Amended Complaint sets forth the following allegations:

At all relevant times, Mathis has been a board certified orthopaedic surgeon licensed to practice in the State of Alabama and is a citizen of the State of Massachusetts. MetLife is a corporation incorporated in the State of New York with its principal place of business located in New York. Source Brokerage is a corporation incorporated in the State of Indiana with its principal place of business in Indiana. Moore is a licensed insurance broker and agent authorized to sell insurance products including disability insurance. Moore's business office is in Indiana and he is a citizen of the State of Indiana.

MetLife Disability Income Insurance Policy No. 6490290 AH was sold and delivered to Mathis on November 16, 2006. The Policy provides a $10,000.00 monthly benefit for a total disability plus a cost of living adjustment. The Policy contains the following relevant language:

4

**Total Disability** or **Totally Disabled** means that due solely to Impairment caused by Injury or Sickness, You are:

1.     Before the end of the Regular Occupation Period shown on page 3:

   a.     Prevented from performing the material and substantial duties of Your Regular Occupation;
   b.     Not Gainfully Employed; and
   c.     Receiving appropriate care from a Physician who is appropriate to treat the condition causing the Impairment. (Original Emphasis)

2.     After the Regular Occupation Period shown on page 3:

   a.     Prevented from performing any occupation for which You are or become reasonably fitted by Your education, training or experience;
   b.     Not Gainfully Employed; and
   c.     Receiving appropriate care from a Physician who is appropriate to treat the condition causing the Impairment.

(Am. Compl., Ex. A, [ECF No. 17-1 at 8](#) (emphasis in original).) The Policy defines "Regular Occupation" to mean:

> Your usual Occupation (or Occupations, if more than one) in which You are Gainfully Employed at the time You become Disabled. If You are not Gainfully Employed at the time Your Total Disability begins, Regular Occupation shall then mean any Occupation(s) for which You are reasonably fitted by Your education, training or experience."

(Am. Compl., Ex. A, [ECF No. 17-1 at 7](#).) The Policy contains a monthly benefit for residual disability rider which defines "**Residual Disability** or **Residually Disabled**" to include "that due solely to impairment caused by Injury or Sickness . . . Your Earnings are reduced by at least twenty percent (20%) of your Prior Earnings" and "You're not Totally Disabled, and are Gainfully Employed[.]" (Am. Compl., Ex. A, [ECF No. 17-1 at 15](#) (emphasis in original).)

On or before November 16, 2006, Mathis was insured by a disability insurance policy issued by Standard Insurance Company ("Standard Policy"). The Standard Policy insured Mathis in the event of a total disability if he was unable to perform his occupation of orthopaedic surgery regardless of whether he was employed in another occupation or not. Such coverage is typically referred to as occupational disability coverage. Moore encouraged Mathis to increase the amount of his coverage to protect his increased income and earning ability as an orthopaedic surgeon. Moore suggested that Mathis replace his Standard Policy with a similar occupational disability policy and advised Mathis that MetLife Policy No. 6490290 AH was the best policy to replace the Standard Policy.

Moore requested Source Brokerage to procure a MetLife Policy with occupational disability coverage that insured Mathis' occupation in the event of a total disability as an orthopaedic surgeon without the need to be gainfully employed. Source Brokerage acquired the MetLife Policy and represented to Moore that the Policy was an occupational disability coverage policy that insured Mathis' occupation in the event of a total disability (without the need to be insured in another occupation) and a residual disability. Moore then represented to Mathis that the MetLife Policy provided occupational disability coverage which insured Mathis in the event he became totally disabled in his occupation (without the need to be gainfully employed). However, the Policy did not specifically insure Mathis' occupation, but only insured him in the event he was "prevented from performing the material and substantial duties of (his)

regular occupation (orthopaedic surgery in Birmingham, Alabama)" and "not gainfully employed". (Am. Compl. ¶ 23.)

On or about March 24, 2017, Mathis became impaired due to injury or sickness and was prevented from performing the material and substantial duties of his occupation as an orthopaedic surgeon in Birmingham, Alabama. In late August or early September 2017, he returned to his occupation but was unable to perform one or more of the material and substantial duties of his regular occupation and was unable to perform the material and substantial duties of his regular occupation for more than 80 percent of the time normally required by him. As of February 2018, Mathis was unable to perform the material and substantial duties of his occupation and was determined to be permanently and totally disabled by his treating physician. As a result, Mathis stopped practicing as an orthopaedic surgeon and began working for an orthopaedic device manufacturer.

Mathis asserts a breach of contract claim against MetLife, alleging that MetLife breached the terms of the Policy by failing to pay him total and/or residual disability benefits and that as a result, he suffers the loss of his disability benefits. He asserts negligence claims against all defendants. Specifically, he claims that they "negligently failed to become familiar with the MetLife Policy and negligently failed to insure [him] for a total disability within his occupation as an orthopaedic surgeon (without the need to be gainfully employed)." (Am. Compl. ¶ 33, ECF No. 17.) Mathis alleges that as a result of the defendants' negligence, he suffers the loss of

benefits he would have received had he been insured by an occupational disability policy.

### III.    Choice of Law

"A federal court sitting in diversity 'applies the choice-of-law rules of the forum state to determine which state's substantive law applies.'" *Atl. Cas. Ins. Co. v. Garcia,* 878 F.3d 566, 569 7th Cir. 2017) (quoting *Auto–Owners Inc. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009)).   Thus, this Court applies Indiana's choice-of-law rules to determine which state's substantive law applies.

In tort cases, the choice-of-law analysis under Indiana law is a multi-step process. First, the Court "must determine whether the differences between the laws of the states are 'important enough to affect the outcome of the litigation.'" *Simon v. United States,* 805 N.E.2d 798, 804–05 (Ind. 2004) (quoting *Hubbard Mfg. Co. v. Greeson,* 515 N.E.2d 1071, 1073 (Ind. 1987)).   If the differences are important enough, "the presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply." *Id.* at 805.  "Under this rule, the court applies the substantive laws of the 'the state where the last event necessary to make an actor liable for the alleged wrong takes place.'" *Id.* (quoting *Hubbard,* 515 N.E.2d at 1073).  This presumption "may be overcome if the court is persuaded that 'the place of the tort bears little connection to this legal action.'" *Id.* (quoting *Hubbard,* 515 N.E.2d at 1074).  The Indiana Supreme Court has explained that "[i]f the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant, 'such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business

of the parties; and 3) the place where the relationship is centered.'" *Id.* (quoting *Hubbard,* 515 N.E.2d at 1073*–*74). It will be a rare case in which the place of the tort is insignificant, however. *Simon,* 805 N.E.2d at 806.

Mathis maintains that Indiana substantive law should be applied in this case; Defendants argue for the application of Alabama law. The Court's first task is to determine whether the differences between the laws of these two states are important enough to affect the outcome of the litigation. Mathis concedes that he has no viable cause of action for negligence under Alabama law. (Pl.'s Resp. MetLife's Mot. Dismiss, ECF No. 25 at 15.) The Alabama Supreme Court has held that a plaintiff's contributory negligence bars any claim for negligence in procuring insurance when the plaintiff fails to read the policy. *Alfa Life Ins. Corp. v. Colza,* 159 So.3d 1240, 1253 (Ala. 2014). Thus, the Alabama Supreme Court concluded that judgment as a matter of law in favor of an agent on a negligent-procurement claim was warranted "when documents available to the insured clearly indicate that the insurance in fact procured for the insured is not what the insured subsequently claims he or she requested the agent to procure." *Colza,* 159 So.3d at 1255; *see also Kanellis v. Pac. Indem. Co.,* 917 So.2d 149, 154—55 (Ala. Civ. App. 2005) ("[a]n insured who is competent in intelligence and background to understand insurance policy language is charged with knowledge of language in a policy received by that insured" and "contributory negligence is a complete defense to a claim based on negligence") (quoting *Allstate Ins. Co. v. Ware,* 824 So.2d 739, 745 (Ala. 2002)). In addition, negligence actions, including actions for misrepresentations relating to the procurement of an

insurance policy, are subject to Alabama's two-year statute of limitations. *See* Ala. Code § 6–2–38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.); *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 417 (Ala. 1997) ("Claims of fraudulent misrepresentation and suppression are subject to a two-year statute of limitations."). The cause of action accrues on the date the policy is delivered. *Liberty Nat'l Life Ins. Co. v. Ingram*, 887 So.2d 222, 227 (Ala. 2004) (concluding limitations period on insurance fraud action began to run "at the latest" on the date the insured received his insurance policy); *Foremost Ins. Co.*, 693 So.2d at 422 (holding that plaintiffs should have discovered misrepresentation about premiums "when they signed and received their sales documents").

In contrast, a viable negligence claim may be cognizable under Indiana law. Indiana recognizes a cause of action for negligent procurement of insurance coverage. *See, e.g.*, *Filip v. Brock*, 879 N.E.2d 1076, 1085 (Ind. 2008). Under Indiana law, "reasonable reliance upon an agent's representations can override an insured's duty to read the policy." *Id.* at 1084 (quoting *Vill. Furniture, Inc. v. Assoc. Ins. Managers, Inc.*, 541 N.E.2d 306, 308 (Ind. Ct. App. 1989)). This exception generally "negates an insured's duty to read part of the policy if an agent insists that a particular hazard will be covered." *Id.* Further, an agent's representations may toll the running of the limitations period. *Groce v. Am. Family Mut. Ins. Co.*, 5 N.E.3d 1154, 1156–57 (Ind. 2014). Because there are substantial differences between the laws of Alabama and

Indiana that could affect the outcome of this action, a presumption arises that the law of the *lex loci delicti* (the place of the wrong) will apply.

Thus, the Court applies the law of "the state where the last event necessary to make an actor liable for the alleged wrong takes place" unless "the place of the tort 'bears little connection' to this legal action." *Simon,* 805 N.E.2d at 805 (quoting *Hubbard,* 515 N.E.2d at 1074). The last event necessary to make an actor liable for negligence is the injury. *Id.* at 806; *see also Castelli v. Steele,* 700 F. Supp. 449, 453 (S.D. Ind. 1988) ("when the Indiana courts refer to the place of the tort, they are in reality asking where the place of *injury* is, for that is always the last event giving rise to a cause of action against the tortfeasor."). As Judge McKinney explained years ago:

> "In a large number of cases, the place of [injury] will be significant and the place with the most contacts. In such cases, the traditional rule serves well" and should be applied. Thus, if the place of injury is State A, and State A also has significant contacts with [the] cause of action (such as the conduct complained of occurring there, parties residing there, etc.,), the inquiry is at an end and the law of State A applies.

*Castelli,* 700 F. Supp. at 452 (quoting *Hubbard,* 515 N.E.2d at 1073). Mathis suffered injury in Alabama, where he lived, where his insured income was earned, and where he sustained economic loss. Even Mathis concedes that he first suffered injury in Alabama. (Pl.'s Resp. Def. Moore's Mot. Dismiss, ECF No. 39 at 7 ("the losses of monthly benefits may have started in Alabama").) Thus, Alabama is the *lex loci delicti*, and a presumption arises that Alabama substantive law applies.

Second, the Court asks whether the place of the injury "'bears little connection' to the legal action." *Simon,* 805 N.E.2d at 806 (quoting *Hubbard,* 515 N.E.2d at 1074). "If the state in which the injury occurred does have other sufficient connection with

the lawsuit, then the inquiry is at an end and that state's law applies." *Castelli,* 700 F. Supp. at 452.

MetLife argues that Alabama has sufficient connection with this action. Mathis obtained the policy to protect his income lost due to disability. When he applied for the policy, Mathis resided in Alabama and worked in Alabama. He was licensed under Alabama law to practice in the State of Alabama. He presumably relied on Moore's representations while Mathis was located in Alabama. Mathis obtained the Policy to insure income he earned in his occupation in Birmingham, Alabama. Mathis lived in Alabama when the Policy was issued and the Policy was delivered to him there. His economic losses—at least some of them—were sustained while he was in Alabama. (The Amended Complaint alleges Mathis is now a citizen of Massachusetts.) In addition, Alabama law regulates insurance transactions with its residents. *See, e.g.,* Ala. Code § 27-1-5 ("No person shall transact a business of insurance in Alabama, or relative to a subject resident, located or to be performed in Alabama, without complying with the applicable provisions of this title.") Therefore, Alabama has a significant interest in protecting Mathis and his income, s*ee Stinnett v. Nw. Mut. Life Ins. Co.,* 101 F. Supp. 2d 720, 723 (S.D. Ind. 2000) ("The purpose of a disability insurance policy is to protect the insured's income lost due to a disability. Because [the plaintiff] is a resident of Indiana, Indiana has a greater interest in protecting his income."), and Alabama has significant connection to this legal action.

To reach the conclusion that Alabama bears sufficient connection to this action, the Court need not even consider the additional facts that Moore was a licensed

insurance producer in Alabama or that the state license was required for him to sell, solicit, or negotiate insurance in the state. (MetLife's Reply Support Mot. Dismiss Pl.'s Am. Compl., Ex. 2, ECF No. 29-1.) *See* Ala Code § 27-7-4(a) ("No person shall in this state sell, solicit, or negotiate insurance for any class or classes of insurance unless the person is then licensed for that line of authority in accordance with this chapter."). Nonetheless, courts may take judicial notice of public records such as a state's licensure of a defendant as an insurance producer. *See*, *e.g.*, *Palay v. United States*, *349 F.3d 418, 425 n.5 (7th Cir. 2003)* ("[I]n resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record."); *Sports Arena Mgmt., Inc. v. K&K Ins. Group, Inc.*, *No. 06 C 6290, 2007 WL 2228622, at *3 n.1 (N.D. Ill. July 31, 2007)* (court can take judicial notice of state's licensure of defendant as an insurance producer, which was a matter of public record). As indicated on Met-Life's Policy Application Part D, which Moore provided with his motion to dismiss, Moore was "licensed to write Personal Health Insurance in the residence state of the applicant [Alabama] on the date the application was signed." (MetLife's Reply Support Mot. Dismiss Pl's Am. Compl., Ex. 3, ECF No. 29-2.) Because Mathis attached a portion of the MetLife Policy to his complaint, the Court may take notice of the remainder of the document provided by the defendant without converting the 12(b)(6) motion into a summary judgment motion. *See Bell Atl. Corp. v. Twombly*, *550 U.S. 544, 568 n.13 (2007)*. Consideration of these other facts—facts regarding Moore's licensure in Alabama, taken from exhibits to which Mathis has objected—simply

lends additional support to the Court's conclusion that Alabama has significant connection to this lawsuit.

In response to arguments that delivery of the Policy was the last event necessary to make the defendants liable for negligence, Mathis argues he alleged that Moore continued making negligent representations about coverage after the Policy was delivered. But, as discussed, it is the place of the injury that is the place of the last event giving rise to a cause of action in tort. *Castelli*, 700 F. Supp. at 453. Mathis maintains that he is now a citizen of Massachusetts, and that his losses continue. But not even Mathis suggests that the Massachusetts substantive law should apply in this action. (*See* Pl.'s Resp. Def. Moore's Mot. Dismiss, ECF No. 39 at 5 ("In determining which state law, Indiana or Alabama, should apply, the court, as a preliminary matter, must determine whether the differences between the laws of the various states is important enough").) That Mathis may suffer some losses while a citizen of Massachusetts does not negate the fact that his injury and other losses were sustained while he was in Alabama. Importantly, the income that he insured was income earned in Alabama.

The connection of this case to Alabama is even stronger than the connection of the lawsuit in *Coldren v. Am. Gen. Life Ins. Co.*, 3:12-cv-28-RLY-WGH, 2012 WL 6055592 (S.D. Ind. Dec. 5, 2012), to the State of Florida. In that case, the last act causing injury occurred in Indiana, the defendant insurance agent resided in Indiana, and the insurance company conducted business through the agent in Indiana. However, the plaintiffs suffered injury, including lapse of the life insurance policy, while

residents of Florida, the defendant insurance agent directed the alleged misrepresentations to the plaintiffs in Florida, and the plaintiffs relied on the insurance agent's representations and rendered consideration in Florida. *Id.* at *4. The court concluded that the plaintiffs alleged the case had significant connections to Florida. *Id.*

This lawsuit's connections with Alabama make this case distinguishable from the cases on which Mathis relies where the courts found the place of injury insignificant. In *Hubbard*, the decedent was working in Illinois at the time of his death and died while using a lift manufactured in Indiana by the defendant corporation. The coroner's inquest was held in Illinois and the decedent's wife and son received workers compensation benefits under Illinois law. 515 N.E.2d at 1074. The plaintiff sued the corporation alleging its defective manufacture of the lift caused her husband's death. *Id.* at 1072. *Both* parties were from Indiana, the plaintiff was an Indiana resident, the defendant was an Indiana corporation with its principal place of business in Indiana, and the relationship between the decedent and the defendant "centered in Indiana." *Id.* The Indiana Supreme Court concluded that the place of the tort, that is, injury, had little connection to the wrongful death action against the manufacturer and that Indiana law applied. *Id.*

In *Simon*, the estates of passengers killed in a plane crash brought a wrongful death action against the United States. The plane's flight began in Pennsylvania, stopped in Ohio, and ended in Kentucky. The plane never flew through Indiana, but the plaintiffs alleged, among other acts, that the negligence of an Indiana-based air traffic controller led to the crash. 805 N.E.2d 800–01, 806. The Indiana Supreme

Court determined that the case was one of those "rare cases in which the place of the tort is insignificant." *Id.* at 806. The court explained that the negligence occurred in Indiana and the District of Columbia, none of the victims or parties were Kentucky residents, the plane had flown over several states and the crash might have occurred anywhere, and Kentucky law did not govern the parties' conduct at the time of the crash. *Id.* The fact that the plane crash occurred in Kentucky was the *only* connection to the state.

In *Morgan v. Fennimore*, 429 Fed. App'x 606 (7th Cir. 2011), an Indiana resident sued his accountant for malpractice for failing to file Ohio tax returns after he had won the Ohio lottery. The district court had to choose whether to apply Indiana or Ohio substantive law. Not only was Indiana the location where the last event necessary to make the defendant liable for alleged malpractice occurred, it was also the state with the most significant contacts to the action: the accountant's "office is in Indiana, during much of the relevant time period [the plaintiff] lived in Indiana, [the parties'] relationship was centered in Indiana, and [the accountant's] failure to properly prepare and file [the plaintiff's] taxes occurred in Indiana." *Id.* at 609. The only apparent contact with Ohio was that the plaintiff had won the Ohio lottery and tax returns should have been filed in that state. The Seventh Circuit applied Indiana law. *Id.*

In *Castelli*, the plaintiff brought a medical malpractice action against her physicians and hospital. Each act of negligence occurred in Indiana, a factor the court found "most important because Indiana doctors are strictly regulated by the state of

Indiana and must conform their practice to the laws of this state." 700 F. Supp. at 454–55. In addition, all the defendants were Indiana residents, the doctor-patient relationship was initiated in Indiana, and all diagnoses and treatment occurred in Indiana. The court determined that the fact that the plaintiff resided in Illinois and may have developed her injuries in Illinois did not outweigh the significant contacts with Indiana. *Id.* at 455. The Court finds that Alabama has much greater connection to this lawsuit than any states where the injury occurred had to the lawsuits brought in the cases relied upon by Mathis.

Finally, Mathis has argued—but not until filing his last response brief—that it would be inappropriate for the Court to make a choice-of-law determination because it would require factual development beyond the pleadings and because without further discovery, it would be difficult to decide which state's law should apply. The Court does not need factual development; nor does it need to go beyond the pleadings to determine that the last event giving rise to this action occurred in Alabama and that Alabama has sufficient contacts with this lawsuit. As Moore points out in his reply, the basic facts relevant to the choice-of-law analysis are not disputed; the only dispute is with respect to the application of the choice-of-law analysis to those facts.

Since Alabama has a sufficient connection to this lawsuit, the Court's inquiry ends and Alabama substantive law applies.

## IV.    Application of Alabama Law

Applying Alabama law, the Court concludes that Mathis has failed to state a negligence claim against any defendant on which relief can be granted. Under Alabama

law, "[a]n insured who is competent in intelligence and background to understand insurance policy language is charged with knowledge of language in a policy received by that insured," *Kanellis,* 917 So.2d at 154 (quoting *Allstate Ins. Co. v. Ware,* 824 So.2d 739, 745 (Ala. 2002)), and "contributory negligence is a complete defense to a claim based on negligence," *id.* at 155; *see also Brawley v. Nw. Mut. Life Ins. Co.,* 288 F. Supp. 3d 1277, 1295 (N.D. Ala. 2017) ("Given that [the plaintiff] received the Policies, had a duty to read them, and elected to keep them for decades, [his] negligence claims against [two insurance agents] are barred as a matter of law by his contributory negligence."). Had Mathis read the Policy when he received it, he would have discovered that the Policy did not provide the occupational disability coverage that Moore represented it did. Mathis, an orthopedic surgeon, is charged with knowledge of the Policy language. Mathis' contributory negligence in failing to read the Policy bars his negligence claims.

Furthermore, Moore delivered the MetLife Policy on November 16, 2006. Thus, the two-year statute of limitations began to run, at the latest, on that date when Mathis received the policy. *See Liberty Nat'l Life Ins. Co. v. Ingram,* 887 So.2d 222, 227 (Ala. 2004). Yet Mathis did not commence this action until June 20, 2018—long after the expiration of the limitations period. Therefore, his claim is time-barred.

Turning to Mathis' breach of contract claim against MetLife, MetLife argues that Mathis has failed to state a claim upon which relief can be granted. Indiana law applies "the most intimate contacts" rule to decide which state's law applies to contract actions. *Atl. Cas. Ins. Co. v. Garcia,* 878 F.3d 566, 569 (7th Cir. 2017). In

applying this rule, courts consider several factors: "'(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties,' giving the greatest weight to the fourth of those factors." *Large v. Mobile Tool Int'l, Inc.*, 724 F.3d 766, 771 (7th Cir. 2013) (quoting *Ky. Nat'l Ins. Co. v. Empire Fire & Marine Ins. Co.,* 919 N.E.2d 565, 575 (Ind. Ct. App. 2010)); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 814 (Ind. 2010). However, the Indiana Supreme Court also recognizes that "an insurance policy is governed by the law of the principal location of the insured risk during the term of the policy." *Nat'l Union Fire Ins. Co.*, 940 N.E.2d at 814 (quoting *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005)).

Mathis insured his lost income due to disability while he was a resident of and working in Alabama. Thus, the most important factor favors application of Alabama law. In addition, Mathis resided in Alabama when he applied for and received the Policy, and the policy was delivered to him in Alabama. Therefore, the Court finds that Alabama's substantive law applies. *See Atl. Cas. Ins. Co.*, 878 F.3d at 569 (concluding Indiana law applied where the property insured was in Indiana and the policies were delivered in Indiana).

Under Alabama law, the elements of a breach of contract are: "(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's non-performance, and (4) damages."

*Gadsden v. Harbin,* 148 So. 3d 690, 696 (Ala. 2013) (quoting *Ex parte Alfa Mut. Ins. Co.,* 799 So. 2d 957, 962 (Ala. 2001) (internal quotation marks omitted)). Mathis has alleged the existence of a valid, binding contract, MetLife's breach thereof by failing to pay him disability benefits, and damages. While Mathis may have sufficiently stated a claim for breach of contract under Indiana law, as the Court has determined, Alabama law applies here. Mathis has not even argued that he sufficiently alleged a breach of contract action under Alabama law.

To survive a motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In other words, "[a] complaint must support the elements of a cause of action to survive dismissal." *Gulf Coast Mineral, LLC v. Tryall Omega, Inc.,* 2:14-CV-1264-WKW [WO], 2016 WL 344960, at *4 (M.D. Ala. Jan. 27, 2016). A plaintiff's performance is a required element for a breach of contract under Alabama law; therefore, Mathis' failure to allege his own performance compels the conclusion that he has failed to state a claim for breach of contract upon which relief can be granted. For example, Mathis does not allege that he provided written proof of loss within 90 days after the end of *each monthly period* for which he claims benefits. (Am. Compl., Ex. A, ECF No. 17-1 at 12.) However, when a complaint fails to state a claim for relief, the plaintiff should ordinarily be given leave to amend the complaint. *See Bogie v. Rosenberg,* 705 F.3d 603, 608 (7th Cir. 2013). Since it is not clear that any amendment would be futile, Mathis will be granted leave to amend to

correct the deficiencies in his breach of contract claim, provided he can do so consistent with Fed. R. Civ. P. 11.

## V. Conclusion

For the reasons stated, the Court: (1) **GRANTS** MetLife's Motion to Dismiss (ECF No. 18), (2) **GRANTS** Source Brokerage's Motion to Dismiss (ECF No. 20), and (3) **GRANTS** Defendant Moore's Motion to Dismiss (ECF No. 31). The negligence claim against each of the defendants will be **DISMISSED WITH PREJUDICE**.

Further, the Court **OVERRULES** Plaintiff's Objections to MetLife's Exhibits (ECF No. 36) with respect to Exhibits 2 and 3 (ECF No. 29-1, ECF No. 29-2); no ruling is necessary as to Exhibit 1 (ECF No. 18-1) since the Court did not consider that exhibit in ruling on the motions to dismiss.

Mathis is allowed until **April 15, 2019** to file an amended pleading that comports with the applicable pleading requirements for a claim for breach of contract under Alabama law against MetLife. The failure to file an amended pleading by the deadline will result in dismissal of the breach of contract claim with prejudice.

**So Ordered.**

Date: 3/28/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution via the court's CMECF to all registered counsel

21