UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHAD E. MATHIS M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01893-JRS-DLP |
| | ) | |
| METROPOLITAN LIFE INSURANCE CO. | ) | |
| a/k/a METLIFE, | ) | |
| SOURCE BROKERAGE, INC., | ) | |
| LEE D. MOORE, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry on Cross-Motions for Summary Judgment
and Motion for Oral Argument**

Plaintiff, Chad E. Mathis, M.D., was an orthopedic surgeon who alleges he became disabled in March 2017. He was insured under Disability Policy No. 6490290 (the "MetLife Policy" or "Policy") issued by Defendant Metropolitan Life Insurance Co. a/k/a/ MetLife ("MetLife"). Mathis submitted a claim for disability insurance benefits. Following a 90-day elimination period, MetLife paid him benefits until August 2017. Mathis alleges he has remained continuously disabled since March 2017. This cause comes before the Court on the cross-motions for summary judgment filed by Mathis and MetLife. The Court decides as follows:

**I. Background Facts**

Mathis was insured under MetLife Disability Income Insurance Policy No. 6490290 AH issued in November 2006. The Policy provided for payment of a Monthly Benefit in the event of a Total Disability or Residual Disability. (Compl., Ex. A,

Policy, ECF No. 70-1.)  The Policy included a Rider: Monthly Benefit for Residual Disability.  (Policy, ECF No. at 15-17).  The Policy defined Residual Disability as follows:

> Residual Disability or Residually Disabled means that due solely to Impairment caused by Injury or Sickness:
> 1. Your Earnings are reduced by at least 20 percent of Your Prior Earnings; and
> 2. You are receiving appropriate care from a Physician who is appropriate to treat the condition causing the Impairment; and
> 3. You are not Totally Disabled, and are Gainfully Employed, but You are:
>     a. Prevented from performing one or more of the material and substantial duties of Your Regular Occupation; or
>     b. Performing the material and substantial duties of Your Regular Occupation, but are not able to perform them for more than 80 percent of the time normally required of You; or
>     c. Engaged in another occupation.

(Policy, ECF No. 70-1 at 15.)  The Monthly Benefit for Residual Disability is calculated based on a percentage loss comparison between Earnings for the month in which a benefit is claimed and Prior Earnings before disability began.  (Policy, ECF No. 70-1 at 16.)  The Policy included Claims provisions.  (Policy, ECF No. 70-1 at 12-13).  The Policy's Proof of Loss provision stated: "Written proof of loss satisfactory to Us must be sent to Us within 90 days after the end of each monthly period for which You claim benefits."  (Policy, ECF No. 70-1 at 12.)  "Write, Written or Writing means a record that may be transmitted by paper or electronic media, and that is consistent with applicable law."  (Policy, ECF No. 70-1 at 8.)  Under the Policy's Time of Payment of Claim provision, no Monthly Benefit was payable until after MetLife received Proof of Loss for that month:  "After We receive Written proof of loss, We will pay the benefits due under the policy."  (Policy, ECF No. 70-1 at 13.)

2

Mathis made a disability claim to MetLife for payment of the Monthly Benefit under the Policy based on neck pain and left arm pain and numbness, with symptoms dating back to 2009.  (Claim Stmt., ECF No. 110-4 at 2–5.)  He claimed that as of March 24, 2017, he was unable to perform complex surgeries although he continued to work in his practice and see patients in his Regular Occupation as an orthopedic surgeon with Alabama Bone and Joint Clinic.  (*Id.* at 5, 9.)  In April 2017, Mathis resigned from Alabama Bone and Joint and a few weeks later began working as an orthopedic surgeon with OrthoSports Associates, LLC ("OrthoSports").  (Mathis Dep. 45–46, ECF No. 110-1.)  On August 1, 2017, he became a partner at OrthoSports and his compensation was "based off of monthly expenses and revenue generated." (Mathis Dep. 24–25, 52, 56, 58, ECF No. 110-1.)

At the end of June 2017, Mathis underwent a left C4/5 foraminotomy to surgically treat his neck and arm pain.  (Mathis Dep. 51, ECF No. 110-1.)  On August 18, 2017, his surgeon released him to return to full-duty work performing all surgical proce-dures, including major cases.  (Mathis Dep. 136, ECF No. 110-1.)  As of August 21, 2017, Mathis began full-duty work as an orthopedic surgeon with OrthoSports, per-forming all his normal surgical duties.  (Mathis Dep. 135–39, ECF No. 110-1.)

In telephone calls on August 21, 2017, Mathis advised MetLife of his return to work and confirmed that he was "performing all his normal surgical duties" and was "not interested in claiming Residual Disability benefits" beyond August 20, 2017. (Mathis Dep. 139, ECF No. 110-1.)  On September 13, 2017, MetLife confirmed with Mathis that he had "returned to full time work in [his] occupation on August 21st"

3

and advised that they "were closing [his] claim" as of that date.  (Mathis Dep. 139–40, ECF No. 110-1.)  MetLife approved and paid Mathis's claim for a Monthly Benefit on a month-by-month basis between March 24, 2017 and August 20, 2017, then closed his claim as requested.  (Francis Claytor Decl. ¶¶ 7–9, 17, ECF No. 110-2.)  Thus, Mathis received the Policy's Monthly Benefit from MetLife through August 20, 2017. (Mathis Dep. 133, 143, ECF No. 110-1.)

About a month later, on September 28, 2017, Mathis's insurance agent Lee Moore called MetLife and advised that Mathis was not able to work at the same level as he had, his income had decreased, and he should be receiving additional benefits.  (Claytor Dec. ¶ 10, ECF No. 110-2.)  MetLife contacted Mathis by phone, informed him about the agent's call, and asked about Mathis's current work status.  (Claytor Dec. ¶ 10, ECF No. 110-2.)  Mathis said that he was working about 75% of his normal pre-disability hours and he was not working full-time but was taking hour-long breaks. (Claytor Dec. ¶ 10 & Ex. 6, ECF No. 110-2; Mathis Dep. 142–44, ECF No. 110-1.)  In an email to his insurance agent Moore, dated October 22, 2017, Mathis wrote that he felt that "as of October, I have been on a full schedule."  (Mathis Dep. 179, ECF No. 110-1.)

Mathis's last contact of any kind with MetLife was a telephone call initiated by MetLife on December 14, 2017.  (Claytor Decl. ¶ 15, ECF No. 110-2.)  During that call Mathis told MetLife that he was continuing to work as usual and has not reduced his hours or operations.  (Claytor Decl. ¶ 13 & Ex. 9, 12/14/17 Call, ECF No. 110-2 at 4,

21.)  MetLife asked Mathis to notify MetLife if that changes or his condition worsens and affects his ability to work. (*Id.*)

To determine Mathis's eligibility for the Monthly Benefit for the remainder of August 2017 and September 2017, MetLife evaluated his monthly financial documentation of earnings and medical production data, consisting of Current Procedural Terminology ("CPT") codes, a system of uniform medical billing codes established by the American Medical Association that identify the medical, surgical, and diagnostic services provided by physicians. (Mathis Dep. 82, 142–46, ECF No. 110-1; Claytor Decl. ¶ 10 & Ex. 7, 9/29/17 Letter, ECF No. 110-2.)  Mathis provided the profit and loss statement for September.  (Mathis Dep. 145–46, ECF No. 110-1.)  The CPT billing records showed that during August and September 2017, Mathis performed all of the duties of his Regular Occupation as an orthopedic surgeon, including complex joint replacements such as total knee and total hip replacements, surgical procedures, and office visits.  (Claytor Decl. ¶¶ 14, 18 & Ex. 10, 1/3/18 Letter & Ex. 11, CPT 11/8/17 Rpt., ECF No. 110-2; Claytor Dep. 81, 83, ECF No. 110-3.)  The production data showed that Mathis performed a significantly greater number of total knee replacements and total hip replacements from August 21, 2017 through September 30, 2017 than he had performed pre-disability.  (Claytor Decl. Ex. 11, CPT 11/8/17 Rpt., ECF No. 110-2; Claytor Dep. 80–82, ECF No. 110-3.)  His average monthly pre-disability production charges were $174,471, and charges in September 2017 were $215,217. (Claytor Decl. Ex. 11, CPT 11/8/17 Rpt., ECF No. 110-2 at 26.)  Mathis's compensation was based off of monthly expenses and revenue generated (production charges).

(Mathis Dep. 58, ECF No. 110-1.)   Based on this information, MetLife found that Mathis failed to satisfy the Policy definition of Residual Disability and failed to qualify for Residual Disability Benefits for the period of August 21-31, 2017, and for the month of September 2017.   (Claytor Decl. ¶ 14 & Ex. 10, 1/3/18 Letter, ECF No. 110-2; Claytor Dep. 61–62, ECF No. 110-3.)

By letter dated January 3, 2018, MetLife notified Mathis of its decision to deny his claim for benefits for the time period from August 21, 2017 to September 30, 2017. (Claytor Decl. ¶ 14 & Ex. 10, 1/3/18 Letter, ECF No. 110-2.)   MetLife's letter concluded "that for the period of August 21st through September 30, 2017, you were able to perform all of the material and substantial duties of your Regular Occupation for more than 80 percent of the time normally required of you prior to the onset of your disability claim.   As such, although we find that you did experience a loss of earnings of more than 20% during the period . . . , we presently find that you do not satisfy the policy definition of Residual Disability for this period."   (Jan. 3, 2018 Letter to Mathis 4, ECF No. 118-11.)   MetLife invited Mathis to provide additional information that he felt "warrants our attention in regard to your claim for Residual Disability benefits for the periods of August 21-31st and September 1-30, 2017," and provided Mathis with the contact information needed to do so.   (*Id.*)

Mathis had no further contact with MetLife.   (Mathis Dep. 152, ECF No. 110-1; Claytor Decl. ¶¶ 15–16, ECF No. 110-2; Claytor Dep. 36–37, ECF No. 110-3.)   Mathis did not submit any Proof of Loss to MetLife for any month after September 2017, and he provided no production records or any other written documentation for any time

period after September 2017.  (Mathis Dep. 146, 152, ECF No. 110-1; Claytor Decl. ¶ 16, ECF No. 110-2; Claytor Dep. 34, 36–37, ECF No. 110-3.)

Mathis continued to work for OrthoSports until March 14, 2018, performing his surgical duties as an orthopedic surgeon.  (Mathis Dep. 61, 90, 191–96, ECF No. 110-1.)  Mathis began working for Smith & Nephew in late March as the medical director for sports medicine.  (Mathis Dep. 32, ECF No. 110-1.)  Since leaving OrthoSports, he has not practiced as an orthopedic surgeon.  (*Id.*)

On June 20, 2018, Mathis commenced this action by filing his Complaint.  (Compl., ECF No. 1.)  He had had no contact with MetLife after the January 3, 2018 letter.  (Mathis Dep. 152, ECF No. 110-1; Claytor Decl. ¶¶ 15-16, ECF No. 110-2; Claytor Dep. 36–37, ECF No. 110-3.)  The case comes before the Court on MetLife's motion for summary judgment on all of Mathis's claims, and Mathis's cross-motion for summary judgment on Mathis's breach of contract claim based on the denial of a claim for a Monthly Benefit for Residual Disability for the period of August 21, 2017 through September 30, 2017.

## II. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute as to a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When considering cross motions for summary judgment, the Court views the facts and draws all reasonable inferences in favor of

the party against whom the motion under consideration is made. *Markel Ins. Co. v. Rau*, 954 F.3d 1012 (7th Cir. 2020) (internal quotations omitted).

"As the 'put up or shut up moment in a lawsuit,' summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008))). "Such a dispute exists when there is sufficient evidence favoring the non-moving party to permit a trier of fact to make a finding in the non-moving party's favor as to any issue for which it bears the burden of proof." *Id.* (citation omitted).

## III.    Discussion

Mathis brings a claim for breach of contract against MetLife, seeking payment of the monthly benefits under the disability policy. MetLife contends that it is entitled to summary judgment on Mathis's claim with respect to each monthly period after September 2017, because Mathis failed to perform his contractual obligations under the Policy by failing to provide any Proof of Loss and this failure defeats his claim. With respect to the claim for breach of contract for the August 21, 2017 to September 30, 2017 time period, MetLife contends that Mathis has insufficient evidence to show that he satisfies the Policy's definition of Residual Disability. MetLife submits that Mathis has no evidence of either a reduced ability to perform his occupational duties as an orthopedic surgeon or of reduced earnings "due solely to Impairment." Further, MetLife argues that Mathis cannot satisfy the contractual definition for "Total

Disability." Mathis concedes this last point (Pl.'s Resp. 15, ECF No. 119), and the Court concludes, without further discussion, that MetLife is entitled to summary judgment on Mathis's claim for monthly benefits for Total Disability.

Mathis otherwise opposes MetLife's motion for summary judgment. He argues that there are genuine issues of material fact as to whether his earnings were reduced by 20% or more and whether such loss was solely due to his Impairment. He also maintains there is a dispute of fact as to whether he was able to perform the material and substantial duties of his occupation for more than 80% of the time. With respect to the post-September 2017 claim, Mathis argues that the Proof of Loss provision is contrary to Alabama law, that the time for him to provide a Proof of Loss has not yet expired, and that his failure to provide Proof of Loss does not act as a forfeiture of his claims. Mathis filed his own cross-motion for summary judgment, seeking judgment as to MetLife's liability to pay claims for the period of August 21, 2017 through September 30, 2017. He argues that he has evidence that he satisfies the Policy definition for Residual Disability. Lastly, Mathis suggests that the Court lacks subject matter jurisdiction over some of his claims as unripe.

Under Alabama law, which the Court has determined applies (*see* Entry on Pending Motions, ECF No. 68), the elements of a breach of contract are: "(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's non-performance, and (4) damages." *City of Gadsden v. Harbin,* 148 So. 3d 690, 696 (Ala. 2013) (quoting *Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001) (internal quotation marks omitted)). As

9

the insured, Mathis bears the burden of proving each of the elements of his breach of contract claim.  *See Travelers Prop. & Cas. Co. of Am. v. Brookwood, LLC*, 238 F. Supp. 3d 1153, 1160 (N.D. Ala. 2017).

## A.  Post-September 2017 Claims for Benefits

MetLife argues that with respect to claims for benefits after September 30, 2017, Mathis cannot show that he performed his obligations under the Policy, which obligations include the requirement that he submit a Proof of Loss "for each monthly period for which You claim benefits" and monthly Proof of Earnings "for each month for which a Residual Disability is claimed."  Mathis responds that he has not submitted a Proof of Loss but maintains that MetLife is attempting to enforce a contractual provision that is contrary to Alabama law, that the time for doing so has not yet passed, and that he satisfied every other requirement of the claims process.

Under Alabama law, "an insured must comply with his or her post-loss obligations when the insured is making a claim upon the insurer, and meeting those obligations is a precondition to any duty on the part of the insurer to make a loss payment." *Thomas v. Safeway Ins. Co. of Ala.,* 244 So.3d 965, 974 (Ala. Civ. App. 2017) (quoting *Baldwin Mut. Ins. Co. v. Adair*, 181 So.3d 1033, 1045 (Ala. 2014)); *see also United Ins. Co. of Am. v. Cope*, 630 So.2d 407, 412 (Ala. 1993) (reversing jury verdict for insured and stating that "until [the insured] submitted a claim in the form specified by the terms of the policy, [the insurer] had no duty to investigate the surgery claim"). "[T]he obligation to pay or to evaluate the validity of the claim does not arise until the insured has complied with the terms of the contract with respect to submitting

claims." *Thomas,* 244 So.3d at 974 (quoting *Baldwin*, 181 So.3d at 1045).  The Alabama Supreme Court has stated that "no case from this Court places on an insurance company an obligation to either investigate or pay a claim until the insured has complied with all of the terms of the contract with respect to submitting claims for payment."  *Id.* (quoting *Baldwin*, 181 So.3d at 1045); *see also Big Thicket Broad. Co. of Ala., Inc. v. Santos*, 594 So.2d 1241, 1244 (Ala. Civ. App. 1991) ("A party to a contract who has caused a failure of performance by the other party cannot take advantage of that failure.") (citing *Dixson v. C. & G. Excavating, Inc.,* 364 So.2d 1160 (Ala. 1978)).

In *Cope*, an insured brought an action against his insurer for bad faith refusal to pay and to investigate a claim under a cancer policy.  The jury entered a verdict in favor of the insured, and on appeal the Alabama Supreme Court reversed.  The policy contained claims provisions requiring that written notice of claims and proofs of loss be provided the insurer.  630 So.2d at 408–09.  The court decided that "until [the insured] submitted a claim in the form specified by the terms of the policy, [the insurer] had no duty to investigate the . . . claim."  *Id.* at 412.  The court rejected the argument that the insurer had a duty to "to do more than review the documents that the insured submits to it."  *Id.*  The court held that the trial court  erred in submitting to the jury a claim that the insurer had a duty to investigate the claim for surgery benefits before the insured had submitted the claim.  *Id.*

Mathis does not dispute, and the evidence establishes the fact, that he failed to provide MetLife with a Proof of Loss to support his claim for monthly benefits for any period after September 30, 2017.  Rather, he argues that MetLife is attempting to

11

enforce a proof of loss provision that is contrary to Alabama law and that his time for providing a proof of loss has not expired.  Alabama law requires that disability insurance policies contain proof of loss language stating that "proof of loss must be furnished to the insurer . . . within 90 days after the termination of the period for which the insurer is liable . . . . "  Ala Code § 27-19-10.  Alabama law further provides that when policy language differs from the mandatory statutory language, the policy language "must not be less favorable to the insured in any respect than the mandatory language."  Ala Code § 27-19-3(a).

Mathis claims that the MetLife Policy language is less favorable than the mandatory statutory language.  For support, he relies on cases that were not decided under Alabama law and that involved policy language quite different from the language in the MetLife Policy.  (Pl.'s Resp. 17–18, ECF No. 119).  The cases on which Mathis relies involved periodic or monthly payments by the insurer, as here.  However, the cases interpreted proof of loss provisions stating that "the termination of the period for which [the insurer is] liable" to mean the entire period of continuous disability for which the insurer was liable and not the end of each monthly period of disability.  *See, e.g.*, *Knoephler v. Guardian Life Ins. Co. of Am.*, 438 F.3d 287, 290 (3d Cir. 2006).  Here, in contrast, the Policy provides that "[w]ritten proof of loss . . . must be sent to Us within 90 days after the end of each *monthly* period for which You claim benefits."  (Policy 12 (emphasis added), ECF No. 70-1.)  This language requiring proof of loss after the end of each "monthly period" leads to a very different result in this case.

Under the Policy language, the time for providing written proof of loss expired 90 days after the end of each monthly period for which Mathis claims benefits.

Furthermore, Mathis has not developed any argument as to how the proof of loss provision in the Policy is less favorable to the insured than the mandatory statutory language. And the proof of loss language is not less favorable to the insured than the mandatory statutory language. Like the statutory language, the Policy language requires proof of loss within 90 days after the end of the period for which the insurer is liable. The Policy provides for periodic monthly benefits, and proof of loss is due after the end of each monthly period for which Mathis claims benefits.

Mathis's construction of the Policy language leads to an absurd result. Under his construction, no proof of loss is due until the end of the entire period for which MetLife could be liable, which under the Policy is the Maximum Benefit Period, when Mathis turns 65 years old. (Policy 3, 7, ECF No. 70-1.) Such a construction would prevent MetLife from investigating and evaluating claims in a timely manner. Besides, the purpose of the disability insurance policy is to replace a portion of lost income; such a policy is not intended to provide a retirement bonus. The MetLife Policy's purpose is to replace a portion of income on a monthly basis: the Policy provides a Monthly Benefit for Residual Disability, written proof of loss is required after "each monthly period," statements of proof from the insured and physicians may be required "on a monthly basis," proof of earnings for Residual Disability may be required for "each month," and the "monthly amount" of the Monthly Benefit for Residual Disability is

determined based on the earning for "the month for which Residual Disability is claimed." (Policy, 3, 8, 11, Rider 1–3, ECF No. 70-1.)[1]

Mathis also argues that his failure to provide proof of loss does not act as a forfeiture of his claim.  While the general rule may be that the failure to comply with time requirements for giving notice and proofs of loss does not work a forfeiture, *see, e.g., Vardaman v. Benefit Ass'n of Ry. Employees*, 82 So.2d 272, 275 (Ala. 1955), and Alabama law requires insurance policies to expressly state that failure to comply with such requirements be expressly stated in the policy to work a forfeiture, *id.* (the Met-Life Policy does not expressly so state), the general rule is not the end of the matter in this case.  The Alabama Supreme Court has explained that if a policy "provides for benefits upon the existence of the disability while the policy is in force, payable when proof is furnished, its existence while in force is the condition precedent, proof is not a condition to the liability, and may be made after the policy lapses, but within a reasonable time and *before suit is begun*." *Metro. Life Ins. Co. v. Phillips*, 182 So. 35, 35 (Ala. 1938) (emphasis added); *see also Equitable Life Assur. Soc. v. Hill*, 161 So. 800, 801 (Ala 1935) (same).  Even *QBE Insurance Corp. v. Blount Medical Center Partners*, Case No. 2:08-cv-2347-PWG,  2010 WL 11565124 (N.D. Ala. Apr. 19,  2010), which Mathis describes as the "capstone case" in support of his position that the failure to provide Proof of Loss for months after September 2017 does not work as a

---

[1] MetLife argues that Mathis's failure to provide monthly Proof of Earnings entitles it to summary judgment on his breach of contract claim.  However, the Policy provides only that Proof of Earnings *may* be required (Rider 2, ECF No. 70-1), and MetLife does not cite evidence or argue that it requested Mathis to provide Proof of Earnings for the post-September 2017 time period.  Therefore, the Court does not rely on this alternative basis in ruling on MetLife's motion for summary judgment.

forfeiture of his claim to disability benefits for those months, supports MetLife's position. The *QBE Insurance* court stated that "Alabama courts do not strictly enforce policy time limitations regarding the furnishing of a [proof of loss] in the absence of a clause clearly providing that the penalty for failing to comply is forfeiture of coverage" but recognized "[t]hat is not to say that Alabama law puts no bounds upon the time in which an insured must furnish a POL." *QBE Ins. Corp.*, 2010 WL 11565124, at *10. The court continued: "The Alabama Supreme Court has indicated, rather, that an insured is required to furnish a [proof of loss] 'within a reasonable time and *before suit is begun*.'" *Id.* (emphasis added) (quoting *Equitable Life Assur. Soc.*, 161 So. at 801).

In short, Mathis's "capstone case" recognizes that Alabama courts "have stated that, unless waived or excused, the insured's failure to provide a valid proof of loss before filing suit provides a complete defense to the action, and they have done so without indicating that an insurer must show prejudice." *QBE Ins. Corp.*, 2010 WL 11565124, at *7 (citing Alabama appellate and supreme court cases). Mathis suggests that by filing suit he somehow "froze" the record, but this assertion is undeveloped and therefore waived. *See, e.g.*, *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (stating that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (quotation marks and citation omitted). In any event, the act of filing suit does not negate the requirement under Alabama law to provide a proof of loss "before suit is begun." The fact that the Policy permits a suit to be filed up to three years after proof of loss is provided to MetLife, a

provision that sets the outer time limit to commence a suit, does not negate the insured's obligation to provide a proof of loss before filing suit.  The two provisions address separate matters of timing.

Mathis does not dispute the fact that he did not provide MetLife with a Proof of Loss to support his claim for monthly benefits for any period after September 30, 2017.  MetLife's obligation to pay or to evaluate the validity of any claim by Mathis does not arise unless and until Mathis has complied with the Policy's terms with respect to submitting a Proof of Loss.  *See, e.g., Baldwin*, 181 So.3d at 1045.  By failing to submit a Proof of Loss, Mathis denied MetLife its right under the contract to investigate his claim and make an informed decision regarding its liability.  While submitting a Proof of Loss for each monthly period is not a condition precedent to MetLife's liability for benefits, under Alabama law and consistent with the Policy's terms, Proof of Loss must have been made both within a reasonable time and before Mathis commenced his lawsuit for benefits.  Mathis has not submitted any Proof of Loss to MetLife with respect to any claim for benefits for the period after September 30, 2017, yet he filed this action seeking benefits for that period.

Although Mathis argues that his post-September 2017 claims are unripe, this action presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality."  13B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3532 (3d ed. Supp. 2018).  Mathis has made a claim against MetLife under the Policy for payment of benefits.  This is not an abstract disagreement but rather a concrete and actual dispute between the parties over

MetLife's obligation to pay monthly benefits.  Mathis's claims for post-September 2017 monthly benefits are ripe for adjudication.

Because Mathis failed to comply with the Policy's terms regarding claims submission by failing to provide a Proof of Loss within a reasonable time and before filing suit for any claim for benefits for the period after September 30, 2017, he cannot prove his own performance under the contract and he cannot prove MetLife's nonperformance under the contract—MetLife has no duty under Alabama law to pay or to evaluate such claims.  *See, e.g., Thomas,* 244 So.3d at 974 (affirming grant of summary judgment in favor of insurer); *Stewart v. Allstate Indem. Co.,* No. 5:12–cv–03644–HGD, 2014 WL 1338878, at *5 (N.D. Ala. Apr. 3, 2014) (granting insurer's motion for summary judgment where plaintiff had not performed under the contract); *QBE Ins. Corp.*, 2010 WL 11565124, at *11 (concluding that insured's failure to furnish a signed proof of loss within a reasonable time precludes recovery on the policy and entitles the insurer to summary judgment on its claim for a declaratory judgment).  As a matter of law, Mathis cannot prove a breach of contract based on a claim for Monthly Benefits for any period after September 30, 2017.

Moreover, the Policy language expressly precludes any legal action until 60 days after written proof of loss has been provided to MetLife.  (Policy 13, ECF No. 70-1.) Such a provision is required under Alabama law.  *See* Ala. Code 27-19-14 (stating that the law requires in insurance contracts the following provision: "Legal Actions: No action shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the . . . Policy.").

This contractual provision is another bar to Mathis's claim for benefits after September 30, 2017.

MetLife is entitled to summary judgment on Mathis's breach of contract claim for payment of a Monthly Benefit for any period of time after September 30, 2017.

### B. August 21, 2017 to September 30, 2017 Claim for Benefits

MetLife contends that Mathis has insufficient evidence to satisfy the Policy definition of "Residual Disability" for the period from August 21, 2017 to September 30, 2017. MetLife asserts that he lacks evidence of a reduced ability to perform his occupational duties and of reduced earnings "due solely to Impairment." Thus, MetLife contests whether Mathis has sufficient evidence to support a finding as to the first and third prongs of the Policy's definition of Residual Disability. MetLife does not challenge that Mathis has sufficient evidence to prove that he is receiving appropriate care from an appropriate physician, which is the second prong of the definition.

MetLife first argues that Mathis's CPT billing records are objective evidence of the type and quantity of procedures Mathis performed both before and after his disability began in March 2017. MetLife asserts that those records show that Mathis performed all the substantial and material duties of his Regular Occupation as an orthopedic surgeon, including complex joint replacements. MetLife further asserts that the CPT records and production charges show that Mathis was more productive during the time period at issue, precluding him from proving that he was unable to perform his duties more than 80% of the time.

Although Mathis has not identified CPT records to show an inability to perform all substantial and material duties, he has presented evidence that the three material and substantial duties of his regular occupation as an orthopedic surgeon are: (1) surgery, (2) seeing patients in the office, and (3) on-call or "call" duties. (Mathis Aff. ¶ 3, ECF No. 118-2.) He has also presented evidence that when he returned to practicing in August 2017, Buggay limited Mathis's performance of call duties due to his physical limitations in that Buggay served as Mathis's backup and performed emergency procedures that Mathis could not perform while on call. (Mathis Aff. ¶¶ 29–30 ECF No. 118-2; Buggay Aff. ¶¶ 20–21, ECF No. 118-3.) Thus, Mathis offers evidence that he was unable to perform his call duties in the usual and customary manner and that he required assistance with surgical procedures.

MetLife argues that Mathis cannot intentionally withhold information from MetLife during its claim evaluation process and then use that information in litigation to prove a breach. Mathis has no evidence that he ever disclosed the limitations on call duty or surgery assistance from Buggay to MetLife during its investigation of his claim. Although the CPT codes include a modifier to show an assistant surgeon (Mathis Dep. 91, ECF No. 110-1), the CPT records Mathis provided to MetLife do not show that Mathis was assisting Buggay or that Buggay was assisting him. Mathis had numerous opportunities in August and September 2017 and thereafter to disclose to MetLife that he was unable to perform call duties and was receiving assistance from another surgeon. And such information would have been contrary to the information that Mathis had disclosed to MetLife—that on August 18, 2017, his surgeon

19

had released him to return to full-time work performing all his normal surgical procedures, including major cases; and that Mathis was, in fact, "performing all his usual and customary duties" as an orthopedic surgeon.  (Mathis Dep. 136, ECF No. 110-1; Claytor Decl. ¶ 8 & Ex. 4, ECF No. 110-2.)  When MetLife denied Mathis's claim in its January 3, 2018 letter, it invited him to provide additional information that he felt "warrants our attention in regard to your claim for Residual Disability benefits for the periods of August 21-31st and September 1-30, 2017," and provided him with the contact information to do so.  Even then, Mathis did not disclose to MetLife that he was unable to perform call duties or was being assisted in surgery by Buggay.

As noted earlier in discussing the post-September 2017 time period, under Alabama law, an insurer's obligation to investigate or pay a claim does not arise "until the insured has complied with all the terms of the contract with respect to submitting claims for payment."  *Cope,* 630 So.2d at 412; *see also Big Thicket Broad. Co. of Ala.,*, 594 So.2d at 1244 ("A party to a contract who has caused a failure of performance by the other party cannot take advantage of that failure.").  Mathis argues that MetLife's January 3, 2018 denial letter waived the argument that he failed to comply with the claims or Proof of Loss provisions of the Policy because the letter did not state that the denial of benefits was based on any such failed compliance.  The Court disagrees. This is not a case like those Mathis cites in which the insurer denies liability on one ground and then seeks to assert other grounds for denial.  *See, e.g.*, *First Ala. Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1063 (11th Cir. 1990) (insurer's denial of liability based on prior acts coverage waived its right to assert late-

20

notice-of-claim defense).  Rather, MetLife denied benefits based on its conclusion that Mathis did not satisfy the definition of Residual Disability.  MetLife has asserted the same defense here.  It merely seeks to hold Mathis to the only theory of coverage that he presented to MetLife during the claim evaluation process.

Mathis is estopped from asserting a breach of contract based on the claim that he was unable to perform call duties in the usual and customary manner or that he required assistance in surgery from Buggay.  *See, e.g.*, *Ala. Mun. Ins. Corp. v. Alliant Ins. Servs., Inc.*, 2012 WL 39950, at \*13 (M.D. Ala. Jan. 9, 2012) ("The elements of the defense of equitable estoppel are: (1) The person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on; (2) the person seeking to assert estoppel relies upon that communication; and (3) the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.") (*citing Gen. Elec. Credit Corp. v. Strickland Div. of Rebel Lumber Co.*, 437 So.2d 1240, 1243 (Ala. 1983)).  Mathis did not inform MetLife of his inability to perform call duties in the usual and customary manner despite knowing that call duty was a material and substantial duty.  Nor did Mathis inform MetLife of his assistance from Buggay despite knowing that surgery was one of his material and substantial duties and that his ability to perform major surgeries was central to his claim for disability all along. Mathis did not provide that information to MetLife as part of his claim or Proof of Loss.

Instead, he claimed only that he was required to take breaks and was required to work reduced hours. Mathis's silence on these matters misleadingly communicated to MetLife only that Mathis was not able to perform his material and substantial duties for more than 80 percent of the time normally required, and MetLife relied on Mathis's communications in investigating and evaluating his claim. Mathis did not advise MetLife of his inability to perform call duties as he had before or of Buggay's assistance until after filing suit. That was too late. As MetLife's claims analyst testified, MetLife "can only evaluate the facts that we received." (Claytor Dep. 74, ECF No. 110-3.) MetLife would reasonably expect that if Mathis had information to support his claim for disability, he would provide that to them, especially after his claim was denied. He failed to do so. Mathis cannot now use information of which he had knowledge during the claim evaluation process to prove that MetLife breached the Policy when he withheld that very information from MetLife and the information contradicts the information that Mathis did provide MetLife.

However, that does not defeat Mathis's claim for breach of contract. Mathis has come forward with evidence that would permit a reasonable factfinder to determine that he was unable to perform his material and substantial duties for more than 80% of the time. Mathis's affidavit states that when he returned to work in August 2017, he had to take breaks and was unable to sustain the same hours that he had previously worked, and he was only able to work 75% of his pre-disability hours on office, surgery and call duty. (Mathis Aff. ¶¶ 8–9, ECF No. 118-2.) MetLife maintains that Mathis's affidavit is conclusory and fails to create a genuine issue of material fact.

Claytor's deposition testimony about the total reduction in overall surgical proce-dures performed by Mathis, from the pre-disability to the August 21 to September 2017 period, and the evidence of a reduction in Mathis's earnings during that time period may lend support to Mathis's statement about the reduction in his work hours. (*see* Claytor Dep. 81–82, ECF No. 110-3.)  And there is evidence that he notified Met-Life in September 2017 that he needed to take breaks and was working only 75% of the time.  (Claytor Decl. Ex. 6, ECF No. 110-2.)  The Court finds that Mathis has presented sufficient evidence to reach a jury and permit a reasonable inference that he meets subpart (b) of the third prong of the Residual Disability definition, and he needs to satisfy only one subpart to satisfy that prong.  Whether a reasonable trier of fact is persuaded by the objective evidence on which MetLife relies or is persuaded by Mathis's own testimony and other evidence about his ability to perform his material and substantial duties remains to be determined.

MetLife further argues that Mathis has no evidence to show reduced earnings by at least 20% of his prior earnings "due solely to Impairment," which is the first prong of the Residual Disability definition.  MetLife submits that Mathis's compensation for the August to September time period was based on his productivity (revenue gen-erated minus monthly expenses)—the same as with his pre-disability compensation. MetLife points to the CPT records in asserting that Mathis generated 23% more rev-enue for September 2017 and that his total production charges for August 2017 were "not even 15% less."  (MetLife Br. 32–33, ECF No. 111.)

Mathis has produced evidence of a reduction in earnings of 20% or more. MetLife engaged Diane Roeder, C.P.A., to calculate Mathis's prior monthly earnings and found them to have been $44,525. (Roeder Dep. 20, ECF No. 118-6.) Mathis offered his own affidavit stating that his earnings in August 2017 were a negative $10,075.51 and his earnings in September 2017 were $4,814.51. (Mathis Aff. ¶¶ 31, 32 & Exs. B & C, ECF No. 118-2 at 17, 23.)[2] In fact, MetLife's denial letter conceded that Mathis experienced a loss of earnings of more than 20% for the period from August 21 through September 30, 2017. (MetLife Jan. 2018 Letter at 4, ECF No. 118-11.) It seems, as Mathis suggests, that MetLife has confused "earnings" with "production charges," which form "the basis" for Mathis's earnings.

While MetLife's Combined Reply in Support of its Motion for Summary Judgment and Response to Plaintiff's Motion is clear that MetLife maintains Mathis cannot prove that any reduction in earnings is "due solely to his Impairment," MetLife's opening brief in support of its summary judgment motion is less than clear. (*Compare* MetLife Combined Reply 22–25, ECF No. 121, *with* MetLife's Br. 32–33, ECF No. 111.) Indeed, MetLife's opening brief focuses exclusively on the bottom line—Mathis's earnings, and ignores the "due solely to Impairment" requirement. The section entitled: "Dr. Mathis lacks evidence of reduced earnings 'due solely to Impairment' of MetLife's opening brief is about one page in length and lacks any discussion of causation or appropriate citation to legal authority. In contrast, the Combined Reply addresses whether Mathis has evidence that his Impairment was the sole cause

---

[2] Mathis states that his earnings for September 2017 were $0, but the exhibit attached to his affidavit reflects earnings of $4,814.51, the same number stated in his brief. (Pl.'s Resp. 9, ECF No. 119.)

of his reduced earnings and contains appropriate citations to legal authority. Arguments "must be raised in opening briefs and must be developed through argument supported by legal authority," or the arguments are deemed waived. *United States ex rel. Chpurko v. e-Biofuels, LLC*, Case No. 1:14-cv-00377-TWP-MJD, 2019 WL 162607, at *7 (S.D. Ind. Jan. 10, 2019) (citing cases). The Court could find that Met-Life has waived the argument that Mathis has insufficient evidence to permit a finding that any reduction in his earnings was "due solely to Impairment."

But the Court need not rely on that waiver. Even if MetLife had properly raised the issue of causation, the Court finds that Mathis has presented sufficient evidence from which a reasonable trier of fact could infer that the 20% or more reduction in his earnings was due solely to an Impairment caused by injury or sickness and that he satisfies the first prong of the Residual Disability definition. Mathis's affidavit sets forth the fact of his cervical stenosis; his symptoms including neck pain, weakness in his upper left extremity, and loss of dexterity in his left hand; and the effect on his ability to perform more complex surgeries such as total joint replacements and perform call duties. (Mathis Aff. ¶¶ 12, 16, 18, 27, 30–32.) As found above, Mathis also has come forward with evidence that would permit a reasonable factfinder to determine, at the least, that he was unable to perform these material and substantial duties of his regular occupation for more than 80% of the time. Mathis presented evidence through his own affidavit that he had to reduce his number of work hours and that the amount of time he could work was 75% that of his pre-disability time. A reasonable trier of fact could infer, but certainly is not required to find, from the

evidence of Mathis's reduced ability to perform his duties and simultaneous reduction in his earnings, that his Impairment caused the reduction. And as Mathis points out, MetLife has determined that he was disabled and paid him disability benefits (Total Disability or Residual Disability) from March 24, 2017 through August 20, 2017, a fact that may lend support to his claim of reduced earnings due to his impairment. (Mathis Aff. ¶ 37 & Ex. D, ECF No. 118-2.)

Neither MetLife nor Mathis is entitled to summary judgment on Mathis's breach of contract claim for payment of a Monthly Benefit for the period of August 21, 2017 through September 30, 2017. However, at trial, with respect to the third prong of the definition of Residual Disability, Mathis will be limited to proving it by showing he was not able to perform his material and substantial duties for more than 80 percent of the time normally required of him.

## Conclusion

For the reasons stated, Mathis's Motion for Oral Argument (ECF No. 127) is **denied**, MetLife's Motion for Summary Judgment (ECF No. 110) is **granted in part and denied in part** and Mathis's Cross-Motion for Summary Judgment (ECF No. 118) is **denied**. MetLife is entitled to summary judgment on Mathis's claim for monthly benefits for Total Disability and on his claim for Residual Disability benefits after September 2017. Summary judgment is **denied** on the claim to Residual Disability benefits for the period of August 21, 2017 through September 30, 2017.

**SO ORDERED.**

Date:  7/6/2020

_____

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution via CM/ECF to all registered parties.